**John G. BROADBENT,
Plaintiff/Appellant,**

v.

**Patricia Roberts HARRIS Secretary of
Health, and Human Services,
Defendant/Appellee.**

No. 80–1920.

United States Court of Appeals,
Tenth Circuit.

Jan. 18, 1983.

**408**

John L. Black, Jr. of Utah Legal Services, Inc., Salt Lake City, Utah (with L.G. Cutler, Salt Lake City, Utah, on the brief), for plaintiff/appellant.

Jay A. Swope, Asst. Regional Atty., Dept. of Health and Human Services, Denver, Colo. (Ronald L. Rencher, U.S. Atty., Lawrence J. Leigh, Asst. U.S. Atty., Salt Lake City, Utah on the brief, and Ronald S. Luedemann, Regional Atty., Thomas A. Nelson, Jr., Deputy Regional Atty., Dept. of Health and Human Services, Denver, Colo., of counsel on the brief), for defendant/appellee.

Before BARRETT, McKAY, Circuit Judges, and BRIMMER\*, District Judge.

PER CURIAM.

This is an appeal from a judgment entered in the United States District Court for the District of Utah, which affirmed an agency decision denying Social Security Disability benefits to the Appellant. The sole issue on appeal is whether there is substantial evidence in the record supporting the decision of the Administrative Law Judge.

Appellant first filed his claim for Social Security Disability benefits on March 26, 1974, alleging disability since November 4, 1971. He was 46 years old at the time his application was made. Prior to that time, Mr. Broadbent had worked as an auto mechanic, a railroad laborer, and a landscape gardener. From 1965 until the onset of his physical problems, he was employed as a custodian at the University of Utah. Subsequent to 1971, he sought employment as a janitorial supervisor, but was not hired be-

\* Honorable Clarence A. Brimmer, Chief Judge of the United States District Court for the District of Wyoming, sitting by designation.

cause he was unable to secure a medical release. The Appellant has completed eleven years of schooling, but has had no vocational or rehabilitation training. He had attempted to enroll in vocational retraining through the Work Incentive program in 1971, but was not allowed to receive training as a result of a physicians' determination of disability. As a practical matter, his opportunities for retraining for more sedentary employment at this stage of his life are minimal or nonexistent.

The litany of diagnosis and treatment of the Appellant's physical problems includes the opinions of five treating physicians who each concluded that he was unable to perform physical work. In 1972, Dr. M. Peter Heilbrun, a neurosurgeon, performed a myelography study on Mr. Broadbent which disclosed a mild defect of the cervical spine at the C4–5 level with a narrowing of the foramina. He diagnosed the condition as cervical spondylosis, which is described as a "degenerative joint disease" affecting the vertebra in the neck area along with their surrounding ligaments and connecting tissue. See *Dorland's Illustrated Medical Dictionary* (25th Ed.). Dr. Heilbrun recommended conservative treatment utilizing a soft neck brace and analgesics. In June of 1974 and April of 1976, Dr. Heilbrun concluded that Mr. Broadbent was unable to work and was not a good candidate for rehabilitation.

Dr. C. Hilmon Castle, an internist, saw Mr. Broadbent several times over a period of about eight months beginning in early 1975. Intermittent head traction and Valium were prescribed. At that time, the Appellant was also having problems with high blood pressure and an inguinal hernia. Dr. Castle concluded, in late August of 1975, that Mr. Broadbent should be considered 100% disabled.

In September of 1976, Dr. Molly Rawlings diagnosed chronic neck and arm pain due to degenerative cervical joint disease and arthritis. Her report indicates that this conclusion was based on the Appellant's marked limitations in physical activity and her examination of X-rays taken at that time.

Dr. Rawlings concluded that the Appellant was unable to work and referred him to Dr. Douglas Danforth, who recommended continued treatment with Valium, a cervical collar, and cervical traction at night. Dr. Danforth also determined that Mr. Broadbent's problems were "chronic in nature" and that he would never return to full activity.

Dr. Danforth again examined the patient in August of 1977. X-rays were not repeated, however, and the doctor relied on documentation of the degenerative joint disease and the last series of X-rays taken eight months prior to that examination. In this report, Dr. Danforth recognized the difficulty in qualifying Mr. Broadbent's complaints, but found a motor weakness in the grip and a slight atrophy of the interosseous muscle between the thumb and forefinger. He also found a definite lack of biceps tendon reflex on the left arm which did not exist on the right. Hypoesthesia, an abnormally decreased sensitivity of the skin, was detected over the distribution of nerves on the C5 and C6 level. His concluding assessment was that Mr. Broadbent suffered from degenerative joint disease with radicular symptoms based on objective evidence of nerve root compression.

X-rays taken in January 1977 were interpreted by Dr. W.H. Achterman, a radiologist, as indicating a mild narrowing of the intervertebral disc space between the C4–5 and C5–6 vertebra. He also found a 50–60% narrowing of the neural foramina, the space between the vertebra through which the nerve fibers pass, in the C4, C5, C6 levels of the Appellant's neck. His conclusion, reported on March 2, 1978, was that cervical spondylosis was indicated and that the condition had not changed significantly since the performance of previous tests.

A few months later, Dr. Alvin J. Wirthlin, a neurologist, performed a consultative examination of the Appellant on behalf of the Social Security Administration. In his report, Dr. Wirthlin noted that Mr. Broadbent exhibited a great deal of histrionic display during the examination and appeared to exaggerate his difficulties. This

assessment appears to be partially based on the limitations in neck movement exhibited by the Appellant while tests were being conducted as compared to the relative ease with which he turned his head to the side during the interview portion of the examination. He also felt that Mr. Broadbent exaggerated his response to palpation conducted over the muscles on the left side of the Appellant's back and neck. Dr. Wirthlin was unable to detect any focal atrophy, muscle tone abnormalities, or coordination problems. Any differences in strength between the right and left arm exhibited during lifting tests were concluded to be characteristic of functional or hysterical types of weakness.

With the use of a pin-prick test, Dr. Wirthlin made a sensory examination on each of the Appellant's limbs. When the pin was applied to various parts of Mr. Broadbent's left arm, he reported a complete lack of sensation. However, when the Appellant was instructed to intertwine his fingers with his hands crossed, and then invert their position, he made several errors, according to Dr. Wirthlin, by claiming that he felt nothing when the pin had actually come in contact with his healthy right hand. Finally, Dr. Wirthlin had the Appellant bend forward, backward, and sideways from the hips and found that the patient had a full range of lower back motion and was able to move without difficulty. From these tests, Dr. Wirthlin concluded:

> My impression from the above is that there are no hard definite objective neurological signs that point to any radiculopathy, myelopathy, or other impairment of neurological function. He has a slight asymmetry in the triceps reflex which I don't feel is meaningful.[1] His examination is for the most part functional in that his sensory examination and motor examination was greatly exaggerated and frankly hysterical. Since this is apparent on the physical examination, it makes me wonder about his subjective complaint of pain. I would have to say in

summary that there are no neurological abnormalities in this patient but with the functional signs he might benefit from a psychological evaluation and follow-up.

In October of 1978, the Appellant was examined by Dr. Bruce F. Sorensen, a neurological surgeon. He found that Mr. Broadbent's deep tendon reflexes revealed an absent biceps reflex on the lower left with a diminished triceps reflex occurring bilaterally. He also concluded that the Appellant was suffering a decreased range of motion in his neck in all spheres by approximately 50%. Dr. Sorensen's review of the X-rays indicated what he termed to be a severe degeneration at the C4, C5, and C6 vertebra with some posterior osteophytes (abnormal bone-type growth) encroaching on the intervertebral foramen. A follow-up examination conducted by Dr. Sorensen on January 9, 1979, showed that Mr. Broadbent's condition remained unchanged. Dr. Sorensen reported that the Appellant suffers from "extensive cervical spondylosis or degenerated disc or arthritis of the neck" and that his condition would not improve.

> I doubt whether this man would be able to do any physical work which would involve motion of the neck or extensive use of the arms because of the neck condition. I do not see him doing any job which requires any physical labor such as janitorial or other similar such activity.

Despite the consensus in opinion of the other doctors that examined Mr. Broadbent, the recommendation of the Administrative Law Judge, filed on November 2, 1978, appears to emphasize the findings of Dr. Wirthlin regarding the veracity of the Appellant's description of his condition. It was also pointed out that there were certain inconsistencies between the information disclosed at the Appellant's initial hearing, on April 21, 1976, and the hearing held in October of 1978. Based on the information then before him, the Administrative Law Judge made the following Findings of Fact:

---

1. Radiculopathy is defined as a disease of the nerve roots. Myelopathy is a general term denoting functional disturbances or pathological changes in the spinal cord. See *Dorland's Illustrated Medical Dictionary* (25th Ed.).

1. Claimant was born January 20, 1928 and is now 50 years of age. He completed 11 years of school, has worked as a landscaper and a janitor in a supervisory capacity at which he was last employed in 1971 for the University of Utah. He subsequently has also been doing some occasional work in auto engine repair for compensation.

2. Claimant met the statutory earnings requirements on November 4, 1971 and continued to meet them through June 30, 1976.

3. Claimant's impairments include hypertension under control, mild cervical arthritis, degenerative cervical spondylosis without radicular symptoms or signs of myelopathy or other impairment of neurological function, mild neck and arm pain relieved with aspirin, repair of hernia, and repair of deviated septum. Claimant's impairments neither by themselves nor in combination have prevented the claimant from engaging in substantial gainful activity for a continuous period which began on or before the date of this decision and which lasted or can be expected to last at least 12 months. Allegation of severe disabling pain is found not credible.

4. Claimant has the residual capacity to perform significant gainful activity, which includes types of work in which he previously engaged and other work of a light to medium nature which can be found in significant numbers in the region in which the claimant lives and in the national economy.

5. Claimant was not under a "disability" as defined by the Social Security Act, as amended, at any time prior to the date of this decision and is, thereby, not entitled to disability insurance benefits.

The Appeals Council adopted the evaluation and conclusions of the Administrative Law Judge in a decision handed down on May 17, 1979.

Mr. Broadbent then sought review of the Appeals Council ruling in the United States District Court for the District of Utah. The United States Magistrate filed a Report and Recommendation with the District Court on November 26, 1979 recommending the reversal of the administrative decision. However, on June 28, 1980, the District Court entered an order affirming the Appeals Council. In the Order Affirming Agency Decision, the Court properly confined the issue to whether there was substantial evidence in the record to support a finding of non-disabling pain. The Court's decision appears to be based on the findings of Dr. Wirthlin, the failure of the other examining physicians to inquire into the truth of the Appellant's representations, and the lack of outwardly apparent physical manifestations of the Appellant's condition. Having examined the same record, we reluctantly must come to a different conclusion.

The term disability, as it is applied here, is defined in 42 U.S.C. Section 423(d), the relevant portions of which are quoted below.

(1)(A) (Disability is the) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

\* \* \* \* \* \*

(2)(A) (A)n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where

such individual lives or in several regions of the country.

* * * * * *

The major tenets of law that have been distilled from the cases decided on this issue are best summarized in *Allen v. Califano*, 613 F.2d 139 (6th Cir., 1980).

1. The burden of proof in a claim for Social Security benefits is upon the claimant to show disability which prevents (him) from performing any substantial gainful employment for the statutory period. Once, however, a prima facie case that claimant cannot perform (his) usual work is made, the burden shifts to the Secretary to show that there is work in the national economy which (he) can perform. (Citations omitted.)

2. Convincing proof, consisting of lay testimony supported by clinical studies and medical evidence, that pain occasions a claimant's inability to perform his or her usual work is sufficient to make a prima facie case. (Citations omitted.)

3. In determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim. (Citations omitted.)

4. Substantiality of evidence must be based upon the record taken as a whole. (Citations omitted.)

Counsel for the Appellant properly point out that a prima facie case of disability has been established under the regulations. The problems Mr. Broadbent has suffered as a result of the degenerative bone disease in his neck and shoulder area are well-documented. No less than five medical specialists have found that Mr. Broadbent's condition is completely disabling. The record shows that each one of these physicians based his or her opinion on their personal observations and the available medical data after having come in contact with the Appellant on at least two occasions over significant periods of time. As stated above, the opinions of these physicians must be given greater weight than that of Dr. Wirthlin, who examined Mr. Broadbent only once at the behest of the Secretary.

Merely reducing the weight of Dr. Wirthlin's findings, however, would not require reversal of the administrative order. Rather, it is the extent to which these findings were relied upon and the fact that they were not directed towards the nature of the Appellant's disability that troubles us so. As indicated by Mr. Broadbent's testimony before the Administrative Law Judge on October 3, 1978, his chief complaint throughout has been the onset of pain during any type of physical activity which becomes disabling over a period of a few hours. When questioned about his ability to turn his head, the Appellant admitted that he was able to do so. Yet, he also noted that the pain gets worse on occasion and is aggravated by a series of head movements from side to side. When the Administrative Law Judge observed that the Appellant had movement in his arms, shoulder, and hands, the Appellant again reported that he can move around but that his left arm weakens after an extended period of time. He admitted to working on cars and in his garden, but specifically pointed out that after one or two hours he is unable to grip tools with his left hand. The problem becomes worse during bad weather and is aggravated by any sort of prolonged physical exertion.

It is not clear from Dr. Wirthlin's report whether a careful study of the Appellant's medical history was made. Such an inquiry would have revealed that the Appellant's main problem has consistently been pain which becomes progressively worse after a few hours of even minimal amounts of physical activity. The tests Dr. Wirthlin performed on the Appellant do not, from his report, appear to have been directed towards this problem. Granted, he did make a determination as to the range of movement in the Appellant's neck. Yet, he does not indicate the number of times the Appellant did move his head from side to

side or whether the test was performed over a particular length of time. Dr. Wirthlin noted, as did the Administrative Law Judge, that Mr. Broadbent was able to sit comfortably while questions were asked and turn his head to the side while he was talking. However, it is not clear from his report how long the interview lasted or whether the Appellant was turning his head several times or simply holding it in one position.

The only conclusion Dr. Wirthlin was able to draw from his pin-prick test was that the Appellant appeared to be exaggerating the degree to which his left arm was numb. The strength tests conducted also led Dr. Wirthlin to conclude that any deficiency in the left arm was characteristic of functional or hysterical type weakness, rather than the result of neurological damage. Yet these tests failed to address what was the patient's most significant problem, that is the progressive loss of control of the left arm and hand over the course of one or two hours of use. It is not at all clear from the record how pin-prick or strength tests conducted during a single visit to the doctor's office are expected to prove or disprove the existence of such a problem. Finally, Dr. Wirthlin's examination was conducted on August 17, 1978 at his office in Salt Lake City, Utah. This is a time of year when the weather, which had aggravated Mr. Broadbent's condition before, is likely to have the least impact.

■ It was the conclusion of the Administrative Law Judge that Mr. Broadbent could maintain gainful employment of the type in which he had previously engaged or other work of a light or medium nature. This decision fails to take into account that substantial gainful activity means performance of a substantial service with a reasonable regularity. *Markham v. Califano,* 601 F.2d 533 (10th Cir., 1979). We are somewhat baffled by the conclusion reached by the Administrative Law Judge and unable to imagine the type of work which a person in the Appellant's condition could perform on a daily basis.

Much is made of that fact that the Appellant admitted to working in his yard, performing a few household tasks, working on cars, taking an occasional trip with his brother in a camper, and on one occasion, driving to California to pick up his children who had run away from home. It is clear from the record that these activities were not conducted on a regular basis and did not involve prolonged physical activity. Nor do such diversions establish, without more evidence, that a person is able to engage in a "substantial gainful activity." They may be considered, along with medical testimony, in the determination of whether a party is entitled to disability benefits. *Markham v. Califano,* 601 F.2d 533 (10th Cir., 1979). Yet their significance in this case is undermined by what we consider to be a fatal deficiency in the medical testimony supporting the Secretary.

■ We are aware that disability benefits may not be awarded on unsubstantiated claims of pain. Such subjective symptoms must be evaluated with due consideration of credibility, motivation, and medical evidence of impairment. *Dvorak v. Celebrezze,* 345 F.2d 894 (10th Cir., 1965). An examination of the record reveals that the Administrative Law Judge had reason to question the credibility of Mr. Broadbent. He was alerted to this, no doubt, by Dr. Wirthlin's report. The Administrative Law Judge was also able to detect discrepancies in the Appellant's testimony regarding the acceptance of money for car repairs and the reasons for leaving the employ of the University of Utah.

■ Exaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court. As a safeguard against such schemes, the determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact. His determinations on this issue are generally considered binding on the reviewing court. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed. 842 (1971); *Cooley v. Weinberger,* 518 F.2d 1151 (10th Cir., 1975); *Mayhue v. Gardner,* 294

414

F.Supp. 853 (D.Kan.1968), aff'd, 416 F.2d 1257 (10th Cir., 1969). Still, we are inclined to cast a skeptical eye on the Administrative Law Judge's conclusion regarding the issue of credibility in light of the heavy reliance he placed on the opinion of Dr. Wirthlin. This is particularly so where the claimant's complaints of pain are supported by a panel of physicians who have treated him over an extended period of time.

■ All of this brings us back to the question of substantial evidence, defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." It must be "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). See also *Markham v. Califano,* 601 F.2d 533 (10th Cir., 1979). Despite the leeway generally granted on administrative decisions of this nature, it is considered the duty of the reviewing court to meticulously examine the record.

> (B)ecause of the helter-skelter nature of the records in these cases, . . . (courts must) not adopt the facile way of disposing of an injured applicant's case by reference to, and reliance upon, the statements of one or two physicians, as against the considered statements of many physicians and surgeons who have had more opportunity of examining and treating the applicant, more occasions of making medical reports upon him, and more expertness in diagnosis . . . . *Davidson v. Gardner,* 370 F.2d 803, 823 (6th Cir., 1966).

As stated above, on completion of such a review, the Court's determination must be made on the record as a whole. The reviewing court cannot weigh the evidence, however, and may not substitute its discretion for that of the agency. *Cagle v. Califano,* 638 F.2d 219 (10th Cir., 1981).

■ Here, there is no weighing to be done. As a matter of law, Dr. Wirthlin's report, viewed in the context of the entire record, cannot be considered an adequate basis for an administrative decision. The tests performed and conclusions reached did not sufficiently address the Appellant's

complaints or contest the findings of the six specialists who had treated the claimant on a continuing basis. To the extent that the administrative tribunal relied so heavily on Dr. Wirthlin's conclusions and his opinion became the basis for any independent findings that were made, including credibility, they cannot be upheld. After a careful examination of the record as a whole, it is our conclusion that Mr. Broadbent's prima facie case of disability was not sufficiently rebutted at the administrative level and the decision reached was not supported by substantial evidence.

Accordingly, the Judgment of the District Court is hereby reversed for remand to the Secretary with instructions to grant Social Security Disability benefits to the Appellant Broadbent from November 1971.