Dorthea STEVENSON, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. No. C–83–0654W.

United States District Court, D. Utah, C.D.

June 6, 1984.

A. Howard Lundgren, Salt Lake City, Utah, for plaintiff.

Kathleen B. Barrett, Asst. U.S. Atty., Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This is an appeal from a decision of the Secretary of Health and Human Services (the "Secretary") denying plaintiff a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(a), and supplemental security income under Title XVI of the Act, *id.* § 1381a. Pursuant to 28 U.S.C. § 636(b)(1)(B) and the rules of this court, this case was referred to the United States Magistrate for a report and recommendation. On April 19, 1984, Magistrate Calvin Gould recommended that this court reverse the Secretary's decision. The Secretary has objected to that recommendation. This court has made a de novo review of the matter pursuant to 28 U.S.C. § 636(b)(1)(B) and now being fully advised renders the following decision.

Plaintiff filed for disability benefits and supplemental security income on October 15, 1981. Those claims were denied initially and upon reconsideration by the Social Security Administration. A hearing was held before an Administrative Law Judge (ALJ) who entered a decision reaffirming the denial of benefits on October 6, 1982. The Social Security Administration's Appeal Council denied plaintiff's request for review on March 11, 1983, and the ALJ's decision became the Secretary's final decision. The sole issue before the court is whether there is substantial evidence in the record supporting the decision of the ALJ.[1]

Plaintiff, Mrs. Dorthea Stevenson, is a fifty-four year old female. She has completed ten years of schooling in her native Germany and has studied accounting and printing at Utah Technical College for a period of two years. Plaintiff has worked as a waitress, a paster in a book bindery, an assembly line worker for a pharmaceutical firm and a warehouse clerk. She has not been regularly employed since October, 1978.

Plaintiff suffers from severe asthma, scoliosis (curvature of the spine), osteoarthritis of the cervical and lumbar spine, and obstructive pulmonary disease. R. 15. The asthma, which is considered to be plaintiff's greatest handicap, R. 133, is being treated with maximum doses of all bronchodialator medications available in the United States to maintain some level of pulmonary function. R. 106. The high doses of medication have caused a progressive worsening of plaintiff's scoliosis, degenerative cervical and lumbar spine disease and osteoarthritis, R. 107, and have caused plaintiff to develop cataracts, R. 144.

After considering plaintiff's testimony, the reports of plaintiff's treating physician, Dr. Donald L. Wilhelm, Dr. James McEntire, Dr. Attilio D. Renetti, Dr. John F. Ramsey, various hospital reports and other exhibits, the ALJ concluded that plaintiff has the residual functional capacity to return to her past work as a pharmaceutical assembly line worker, and therefore is not disabled within the meaning of the act. Plaintiff contends that the ALJ erred by not finding that her impairment meets the

---

1. The scope of review of Title II determinations is set forth in 42 U.S.C. § 405(g): "The Findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." That standard is also applicable to the review of Title XVI determinations. *See id.* § 1383(c)(3).

criteria of a listed impairment in 20 C.F.R. part 404, subpt. P, app. I (1983), and that in any event, the ALJ's finding that plaintiff can perform her past work is not supported by substantial evidence. The Magistrate concluded that the ALJ's decision was not based on substantial evidence and recommended reversal. After carefully considering the entire record, the court concludes that the case must be remanded for: (1) development of a more complete record concerning whether plaintiff's asthma satisfies the listed impairment criteria; and (2) if necessary, development of a more complete record and reconsideration of the evidence as to plaintiff's residual capacity to perform her past work.

I. *Listed Impairment*

The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; ...

42 U.S.C. § 416(i)(1)(A); *see id.* §§ 423(d)(1)(A); 1382c(a)(3)(A). If a claimant can show that he or she is afflicted with an impairment listed in 20 C.F.R. part 404, subpt. P, app. I (1983), or a medical equivalent of a listed impairment, the inability to engage in any substantial gainful activity is presumed. *See id.* § 404.-1520(a).[2]

In this case plaintiff claims that the criteria for the listed impairment of asthma are satisfied. The listing for asthma applicable here requires a medical finding of asthma with:

> Episodes of severe attacks ... in spite of prescribed treatment, occurring at least once every 2 months, or on an average of at least 6 times a year and prolonged expiration with wheezing or rhonchi between attacks.

*Id.* part 404, subpt. P, app. I § 3.03B. Further, the regulations define what constitutes a severe attack and state what type of evidence is necessary to establish the frequency and severity of episodes:

> Documentation for episodic asthma should include the hospital or emergency room records indicating the dates of treatment, clinical findings on presentation, what treatment was given and for what period of time, and the clinical response. Severe attacks of episodic asthma, as listed in § 3.03B, are defined as prolonged episodes lasting at least several hours, requiring intensive treatment such as intravenous drug administration or inhalation therapy in a hospital or emergency room.

*Id.* § 3.00C.

Plaintiff's treating physician stated in a report:

> Since April of 1982, the date of the last update, [plaintiff] has required multiple emergency room visits on roughly a 1–2 per month basis, as well as very close follow-up at the office on approximately every 2–3 week basis, punctuated with occasional acute asthmatic attacks .... She has come into the office at times quite dyspneic with peak flow rates as low as 60–70 liters per minute. For these she has required acute treatments by nebulizer, in addition to occasional intraveneous medications.

R. 152. Dr. Wilhelm restated the frequency of plaintiff's emergency room visits and acute treatment in a letter dated September 13, 1983 (attached as an exhibit to plaintiff's memorandum hereinafter referred to as the "Wilhelm Letter"). Plaintiff, however, did not produce documentation of such emergency room visits and treatment for consideration by the Secretary as required by § 3.00C quoted above.

The record indicates that plaintiff was not represented by counsel in her proceedings before the Social Security Administration, including her hearing before the ALJ.

---

**2.** Most of the listed impairments satisfy the durational requirement of twelve continuous months. *See* 20 C.F.R. § 404.1525(a) (1983).

Plaintiff was advised of her right to counsel by the ALJ, but chose to proceed without counsel. The ALJ never suggested to plaintiff, however, that her impairment may satisfy the criteria for a listed impairment, and did not suggest to her that she should submit documentation of her emergency room and hospital visits and acute treatment. Moreover, the ALJ made no finding concerning whether plaintiff's asthma met the listed criteria and apparently did not even consider the matter.

 When a claimant is not represented by counsel, the ALJ has an important duty " 'to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts,' and he must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.' " *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir.1981); *see Cruz v. Schweiker*, 645 F.2d 812 (9th Cir.1981). In this case, the ALJ, consistent with his duties, could have explained to plaintiff the type of showing necessary to establish that her impairment meets the listed criteria for asthma. The ALJ did not do so, and as a result the court concludes that the record was not fully and fairly developed.

The Act provides that a district court reviewing the decision of the Secretary "may at any time, on good cause shown, order additional evidence to be taken before the Secretary ...." 42 U.S.C. § 405(b). Good cause for the taking of additional evidence is present in this case. Plaintiff is now assisted by counsel, and should be allowed to present documentation to demonstrate that her asthma meets the listed criteria. The case must therefore be remanded for full development of the record.

## II. *Residual Capacity to Perform Past Work*

If on remand plaintiff is unable to provide sufficient documentary evidence to satisfy the listed criteria, the Secretary must reconsider plaintiff's ability to perform her past work. The Magistrate concluded that the ALJ's finding that plaintiff has the residual capacity to perform her past work as an assembly line worker is not supported by substantial evidence. The court, however, finds it unnecessary to reach that conclusion based on the present record. The ALJ did not state the basis for a significant finding that there are no environmental limitations on plaintiff's ability to perform her past work, and did not apply the correct standard for determining plaintiff's capacity to perform substantial gainful activity.

Prior to her warehouse work, which lasted for only two weeks, plaintiff was employed as a machine operator on an assembly line for Deseret Pharmaceutical. The ALJ found that plaintiff has the residual functional capacity to perform work not involving frequent lifting and carrying of objects heavier than twenty pounds, that plaintiff's assembly line work did not require such lifting and carrying, and that plaintiff can therefore perform her past work. That finding ended the inquiry because plaintiff could not make out a prima facie showing of disability if she could return to her previous work. *See Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir.1983); *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983).[3]

To determine if a claimant can return to his or her previous work, the regulations require the ALJ to evaluate the applicant's "residual functional capacity," 20 C.F.R. §§ 404.1561, 616.961 (1983), which means the ability to work in spite of physical or mental impairments, *id.* § 404.1545, 416.-945. " 'Residual functional capacity' combines a medical assessment with the descriptions by physicians, the applicant or

---

**3.** The determination of ability to perform substantial gainful activity is a two-step process. The burden is on the claimant to prove that she is disabled within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5). However, if the claimant makes a prima facie showing of inability to perform her past work, the burden then shifts to the Secretary to show there is other gainful work in the economy that the claimant could perform. *See Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983).

others of any limitations on the applicant's ability to work." *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir.1983).

In this case, plaintiff testified that she felt that her prior assembly line work was the cause of her asthma. R. 27. There is no direct medical evidence in the record to support that conclusion; however, the record indicates that plaintiff's symptoms began while she was employed at Deseret Pharmaceutical. R. 114. The clinical history compiled by Dr. Harold Barkman and Dr. Renzetti states:

> At [the onset of her symptoms], [plaintiff] was employed at Deseret Pharmaceuticals and was involved in the inspection and assembling of angio needles. Concomitant with the beginning of the symptoms, there was an apparent change in the physical plant as they moved into a newer facility. At that time, she was apparently using an automatic pulling machine for the cutting of hot plastic catheters. In addition to being around hot plastic, she also notes that in the cutting area there was fine dust that had to be swept from the room a couple of times during the shift.

*Id.* Plaintiff's treating physician, Dr. Wilhelm, notes in a report that further investigation is pending concerning whether various chemicals used at Deseret Pharmaceutical were causally related to plaintiff's pulmonary illness. R. 106. In a recent letter that was not part of the record before the ALJ, Dr. Wilhelm states:

> I do not feel that [Mrs. Stevenson] can return to her former work because I think this would clearly aggravate her existing problems.... At times she can maintain fairly good function, and during these times activity level could be increased although she would need to avoid any activity where dust, chemicals, fumes, smoke, etc., are present, since all these will aggravate her chronic pulmonary disease.

Wilhelm Letter at 2.

The ALJ makes only one brief comment concerning possible environmental limita-

tions on plaintiff's residual capacity: "Environmental restrictions are additionally noted as testified to by the claimant yet it is not felt that work environment such as she had in the past at a pharmaceutical firm on an assembly line would be beyond her tolerance." R. 14. Aside from that observation, the ALJ made no factual finding concerning environmental limitations. Moreover, the ALJ does not point out any evidence in the record to support his "feeling" that plaintiff's past work environment would not be beyond her tolerance, nor does he explain his reasoning for rejecting the evidence of environmental limitations which would preclude plaintiff from being engaged in her past work. Additionally, the ALJ made no findings as to the significance of any environmental limitations vis-a-vis plaintiff's exertional capacity. The ALJ merely found that plaintiff has the residual capacity to perform light work not involving frequent lifting and carrying of objects heavier than twenty pounds. R. 15.

There is ample evidence in the record, including the evidence referred to above that the types of light work, if any, that plaintiff can perform may be limited. The absence of requisite findings by the ALJ compels a remand for resolution of the question of whether plaintiff's capacity to perform her past work is diminished by environmental limitations. *See Dellolio v. Heckler*, 705 F.2d 123 (5th Cir.1983).

■ Should it be determined that plaintiff has established a prima facie case that she does not have the residual capacity to perform her past work, the burden will then shift to the Secretary to show that there is work in the national economy which plaintiff can perform. *See Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983).[4] If environmental limitations diminish plaintiff's capacity to perform any type of light work, and the reduction of the number of jobs plaintiff might be able to perform cannot be measured under the Medical-Vocational Guidelines, vocational testimony is required and plenary consider-

---

**4.** *See* discussion *supra* note 3.

ation must be given to all the facts. *See Dellolio v. Heckler,* 705 F.2d 123, 128 (5th Cir.1983); *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982).

Finally, plaintiff's ability to perform her past work or any other work must be considered in light of the Tenth Circuit's definition of substantial gainful activity: "[S]ubstantial gainful activity means performance of a substantial service with reasonable regularity." *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983). The ALJ's findings indicate that this standard was not applied in determining plaintiff's ability to perform her past work. In a letter dated September 13, 1983, Dr. Wilhelm states:

> [Mrs. Stevenson] is unable to maintain sustained days of symptom-free disease and therefore this makes employment in a usual occupation difficult unless she has a very understanding employer.... She may be capable of some gainful activity but, again, it would be an activity where tolerance would be required by the employer for excessive absenteeism due to acute breathing attacks.

Wilhelm Letter at 20. That evidence together with the evidence in the record and any additional evidence taken by the Secretary on remand must be carefully considered in determining if plaintiff is capable of performing substantial gainful activity within the meaning of the definition quoted above.

For the reasons set forth herein, IT IS HEREBY ORDERED that this case is REMANDED to the Secretary for further proceedings consistent herewith.