16 F.3d 418
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Diane VAUGHN, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-7045.
 United States Court of Appeals, Tenth Circuit.
 Feb. 3, 1994.
 
 1
 Before ANDERSON and EBEL, Circuit Judges, and WINDER,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Diane Vaughn (claimant) brought this action in district court after the Secretary of Health and Human Services denied her application for supplemental security income benefits. The district court affirmed the denial of benefits. The issue on appeal is whether substantial evidence supports the Secretary's finding that claimant's impairment does not meet 20 C.F.R. Part 404, Subpt. P, App.1, 12.05(C) of the Listing of Impairments (listings). We reverse and remand for further proceedings.
 
 
 4
 Claimant is mildly mentally retarded, with an IQ of 69. She suffers from grand mal seizure disorder, spondylolisthesis, and partial deafness. The record also shows claimant has had an abnormal EKG. Claimant experiences the grand mal seizures with some frequency. Claimant's housemate reported that claimant's seizures occur as often as five times a week. Claimant performs housework, but, because of the seizures, does not cook, unless someone is with her, or drive.
 
 
 5
 To control the seizures, claimant's doctor prescribed Phenobarb and Dilantin. Claimant explained in a January 1991 disability report that she discontinued her seizure medication because it made her sick. Appellant's App., Vol. II, at 187. She stated that her doctor would not change the medication. Claimant reported to one physician in February 1991 that she stopped the medication because it made her dizzy and unable to think adequately to care for her baby. Id. at 240. In March 1991, claimant told another physician that she had not taken the medication for the past year because it made her too dizzy and also because she thought the medication triggered seizures. Id. at 244, 249.
 
 
 6
 Claimant's seizure medication was changed in May 1991 to Tranexene and changed again in July 1991. At claimant's September 1991 administrative hearing, claimant testified that she had experienced multiple seizures in the month prior to the hearing, with the last one occurring the week before the hearing. Id. at 62-63. When asked whether she had taken her medication before her most recent seizure, claimant replied, "Yes." Id. at 63.
 
 
 7
 An administrative law judge (ALJ) found that claimant was not entitled to supplemental security income benefits. Applying the five-step disability analysis, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.1988) (explaining five-step analysis), the ALJ found that claimant's mild mental retardation and seizure disorders are a severe impairment, but that claimant did not meet disability listing 12.05(C) because she failed to follow prescribed treatment for her seizure disorder. The ALJ concluded that although the mental retardation and seizures limited claimant's residual functional capacity, claimant retained the capacity to perform a significant number of light or sedentary jobs. The Appeals Council denied claimant's request for review of the ALJ's decision.
 
 
 8
 We review the Secretary's decision to determine whether substantial evidence supports the findings. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir.1988). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Williams, 844 F.2d at 750 (quoting Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983)(further citation omitted)). " 'Evidence is not substantial "if it is overwhelmed by other evidence ... or if it really constitutes not evidence but mere conclusion." ' " Id. (citations omitted) (alteration in original).
 
 
 9
 On appeal claimant argues that her impairments meet 12.05(C) of the listings, and the ALJ's conclusion to the contrary is not supported by substantial evidence. If claimant's impairments meet 12.05(C) of the listings, claimant has satisfied her burden of proving her disability. See 20 C.F.R. 416.920(d) (stating that if impairment is listed, then claimant must be found disabled without regard to her age, education, or work experience); Williams, 844 F.2d at 751 (explaining that listed impairments are "conclusively presumed to be disabling"); Weakley v. Heckler, 795 F.2d 64, 65 (10th Cir.1986)(noting that claimant met burden of proving disability where impairment met listings).
 
 
 10
 Disability listing 12.05(C) requires claimant to meet a two-prong test: claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." An impairment imposes a significant work-related limitation of function "when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir.1987); accord Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir.1987); Cook v. Bowen, 797 F.2d 687, 690 (8th Cir.1986); Nieves v. Secretary of Health & Human Servs., 775 F.2d 12, 14 (1st Cir.1985); Edwards ex rel. Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir.1985). "[T]he significant limitation under section 12.05(C) need not be disabling in and of itself." Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir.1985).
 
 
 11
 It is undisputed that claimant's IQ of 69 falls within the required range. The ALJ concluded, however, that claimant did not meet the second prong of 12.05(C) because claimant refused to follow prescribed treatment for her seizures. The ALJ did not discuss whether claimant's spondylolisthesis and partial deafness imposed any work-related limitation of function.
 
 
 12
 Claimant argues on appeal that her seizures necessarily meet the second prong of 12.05(C) because the ALJ found the seizures to be a severe impairment at step two of the disability analysis. See 20 C.F.R. 416.920(c) (describing step two); see also Edwards v. Heckler, 736 F.2d 625, 631 (11th Cir.1984) (holding that claimant satisfies the second prong of 12.05(C) if claimant has a severe impairment at step two of the disability analysis); accord Nieves, 775 F.2d at 14 (following Edwards ). As additional support for her claim, claimant points out that the ALJ found that the seizures limit her residual functional capacity and that she can perform only certain types of light or sedentary work. The Secretary does not take issue with claimant's suggested interpretations of 12.05(C), but argues that the seizures were properly disregarded because of claimant's failure to follow prescribed treatment.
 
 
 13
 Before addressing whether claimant failed to follow prescribed treatment, we first decide whether claimant has proven her disability by satisfying the second prong of 12.05(C). See Weakley, 795 F.2d at 66 (explaining that once a claimant proves disability by meeting the listings, burden shifts to Secretary to prove claimant's failure to follow prescribed treatment). The record shows that claimant's seizures began more than fifteen years ago. They occur both during the day and at night. Claimant testified that her seizures "hit" without advance warning. Claimant has no memory of what happens during her, typically convulsive, seizures. That claimant's seizures occur with some frequency is documented by several hospital reports. Although these reports, and much of the evidence in the record, pertain to claimant's seizure activity before she began taking new seizure medication, the reports, nonetheless, establish that claimant suffers from a severe seizure disorder.
 
 
 14
 The ALJ, analyzing whether claimant has a severe impairment at step two of the disability analysis, recognized that, because of the seizures, claimant
 
 
 15
 is not able to work at heights, work around hazardous or dangerous machinery or equipment, or would not be able to drive any sort of a vehicle, could not work in circumstances where she might injure herself or others, etc. In other words, the claimant cannot work in a job where if she had a seizure it could be harmful to herself or someone else.
 
 
 16
 Appellant's App., Vol. II, at 20. Claimant's residual functional capacity was likewise limited, according to the ALJ. We do not decide whether the second prong of 12.05(C) will always be met when a claimant is found to have a severe impairment at step two of the disability analysis. We hold only that, considering these undisputed significant limitations on claimant's ability to work, as well as the severity, frequency, and unpredictable nature of claimant's seizures, the seizure disorder imposes an additional and significant work-related limitation of function sufficient to satisfy 12.05(C).[2] Cf. Strunk v. Heckler, 732 F.2d 1357, 1361-62 (7th Cir.1984) (affirming Secretary's conclusion that epileptic seizure disorder did not meet second prong of 12.05(C) where there was conflicting medical evidence that the disorder existed).
 
 
 17
 We now address whether claimant failed to follow prescribed treatment for her seizures. The regulations provide that a claimant will not be found disabled if he or she, without good reason, fails to follow prescribed treatment that can restore the ability to work. 20 C.F.R. 416.930(a), (b). This court has explained that four elements must be met before denying benefits for failure to follow prescribed treatment: "(1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse." Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir.1985). Substantial evidence must support each element. Id.
 
 
 18
 Focusing on claimant's admitted refusal to take Dilantin, which had been prescribed for her prior to May 1991, the ALJ found that claimant's "seizures are controlled so long as she takes her medications," Appellant's App., Vol. II at 20, and that the medication "should be expected to restore the claimant's ability to work," id. at 22. The record shows that during the period of time when claimant refused to take the Dilantin, she received emergency treatment for her seizures on several occasions. Blood tests of claimant's anticonvulsant levels during those emergency treatments confirm that claimant was not taking the Dilantin. We cannot agree with the ALJ's conclusion that treatment notes from Dr. Webb, claimant's physician, show he was able to effectively control claimant's seizures with medications. We have reviewed Dr. Webb's treatment notes. To the extent they are legible, the notes show that claimant, on one occasion, remained seizure free for a week after her Dilantin level had been restored to an appropriate level, but on another occasion, she did not.
 
 
 19
 Although we find no evidence in the record that claimant's seizures were effectively controlled when she took Dilantin, the ALJ could, nonetheless, presume that the seizure medication would restore claimant's ability to work. The Secretary has announced as a matter of policy that "[a]s a result of modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity." Social Security Ruling 87-6, [1983-1991 Rulings] Soc. Sec. Rep. Serv. (West) 506 (1987).[3] A person claiming to be disabled by epileptic seizures cannot be found disabled without "detailed information ... [that] establish[es] whether the seizures are due to factors beyond the individual's control or to noncompliance with prescribed therapy." Id. at 507. When tests show subtherapeutic anticonvulsant blood levels, as in claimant's situation, the Secretary presumes that an individual is not following prescribed treatment "[u]nless convincing evidence is provided that subtherapeutic blood drug levels are due to abnormal absorption or metabolism." Id. at 508.
 
 
 20
 Consideration must now be given to whether claimant's refusal to take Dilantin was unjustified. The record contains only brief, general descriptions of claimant's side effects with Dilantin: the medication made her sick, Appellant's App., Vol. II, at 187, dizzy, id. at 191, 240, 249, and "not able to think adequately to take care of her baby," id. at 240. She told one physician that she thought the Dilantin triggered seizures. Id. at 249. The ALJ did not question claimant about why she stopped taking the Dilantin.[4] Such questions should have been asked. Social Security Ruling 82-59, [1975-1982 Rulings] Soc. Sec. Rep. Serv. (West) 793, 794 (1982) ("The claimant ... should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal"). Faced with a record that has not been adequately developed, we cannot determine on appeal whether claimant's refusal to take Dilantin was unjustified.
 
 
 21
 We note that Dilantin was not prescribed for claimant after April 1991. After learning that failure to take Dilantin would result in denial of benefits, claimant sought treatment from a new physician who prescribed new seizure medication. Claimant testified that she still experiences seizures despite taking the new medication. The ALJ should have evaluated claimant's compliance with the new prescribed treatment. See id. at 797 (requiring that an individual be warned that continued failure to follow prescribed treatment will result in denial of benefits, and specifying that after the warning, "[t]he individual will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so.").
 
 
 22
 We cannot determine from the record whether claimant has failed to follow her new prescribed treatment. The first and second elements necessary to show failure to follow prescribed treatment are satisfied: the Secretary can presume the new seizure medication would restore claimant's ability to work, and the new medication has been prescribed. As for the third element, however, there is no evidence that claimant has refused to take the new medication. The record lacks any documentary evidence (blood test, doctor's report[5]) necessary to determine whether claimant's seizures could be due to her noncompliance with the new medication. See Social Security Ruling 87-6, [1983-1991 Rulings] Soc. Sec. Rep. Serv. at 507-08 (explaining need for such evidence).
 
 
 23
 We remand this case for further development of the record. On remand, the Secretary should make full inquiry into claimant's reasons for discontinuing Dilantin. The Secretary also should obtain reports from claimant's new treating physician, Dr. Cantrell. If the reports show that claimant continues to experience seizures despite taking her new medication, then the Secretary needs to obtain "detailed information ... necessary to establish whether the seizures are due to factors beyond the individual's control or to noncompliance with prescribed therapy." Id. at 507.
 
 
 24
 Accordingly, the judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 **
 Honorable David K. Winder, Chief Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Because the record does not contain evidence of work-related limitations stemming from claimant's spondylolisthesis and partial deafness, we have not considered whether claimant met 12.05(C) based on the combined impact of her impairments. See Davis v. Shalala, 985 F.2d 528, 533-34 (11th Cir.1993)(holding that Secretary must consider combined impact of claimant's impairments when determining whether claimant meets the second prong of 12.05(C))
 
 
 [3]
 Social Security Ruling 87-6 applies when an individual claims to meet the epilepsy listing from the Listing of Impairments. The Secretary's pronouncements in the ruling on the role of prescribed treatment in the evaluation of epilepsy are instructive in this case, even though claimant does not claim to meet the epilepsy listing
 
 
 [4]
 Claimant was not represented by an attorney at the hearing
 
 
 [5]
 There are no reports in the record from Dr. Cantrell, claimant's new physician