FILED
United States Court of Appeals
Tenth Circuit

July 1, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROSALIN S. LYKINS,

    Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

    Defendant - Appellee.

No. 15-5081
(D.C. No. 4:14-CV-00248-GKF-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **PHILLIPS**, Circuit Judges.
_____

Rosalin S. Lykins appeals a decision by the district court affirming the

Commissioner of Social Security's denial of her application for benefits.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Lykins injured her lower back in April 2010.  She applied for disability

insurance benefits and supplemental social security income shortly thereafter,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

claiming her back pain and history of congestive heart failure left her unable to work. While her application was pending, medication and epidural injections failed to relieve her pain, and she underwent back surgery in January 2012. Later that year, an administrative law judge ("ALJ") denied her application for benefits.

The ALJ followed the five-step disability analysis. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing the five-step process). He found that Lykins had severe impairments, but determined that Lykins:

> has the residual functional capacity [("RFC")] to lift and/or carry no more than 10 pounds occasionally or less than 10 pounds frequently; pushing and/or pulling consistent with the lifting and carrying limitations; stand and/or walk for 2 hours out of an 8-hour workday and 15 minutes at one time; sit for up to 6 hours out of an 8-hour workday; occasionally climb stairs, balance, bend or stoop, kneel, crouch and crawl, but cannot climb ladders, ropes or scaffolding. She would be limited to occasional use of foot controls due to her back condition, extremes of cold and heat, driving, and avoid all exposure to hazardous or fast machinery and unprotected heights.

The ALJ then asked a vocational expert ("VE") if occupations existed for a hypothetical person with these impairments. In the VE's opinion, the hypothetical individual could perform a number of unskilled, sedentary occupations. The ALJ then found Lykins unable to perform her past relevant work, but able to perform jobs that exist in significant numbers in the national economy. He therefore concluded she was not disabled and denied her application. The appeals council denied review and the district court affirmed. This appeal followed.

2

## II

We review the district court's decision in a social security case de novo. Id. "[W]e independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." Id. (quotation omitted). "Although we will not reweigh the evidence or retry the case, we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. (quotations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Id. (quotation omitted). Moreover, the record must show the ALJ considered all the evidence, but he need only discuss the evidence supporting his decision, along with any "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Mays v. Colvin, 739 F.3d 569, 576 (10th Cir. 2014) (quotation omitted).

## A

Lykins argues the ALJ's RFC finding failed to incorporate a doctor's opinion that Lykins could only occasionally grasp tools. In particular, Dr. Ashok Kache examined Lykins in 2010. Dr. Kache determined that Lykins could "effectively grasp tools such as a hammer . . . on occasion." Based on this observation, Lykins contends "a claimant limited to only occasional use of the hands cannot perform the jobs the VE and the ALJ found for her." We reject her argument that failure to

3

mention the limitation undermines the substantial evidence supporting the ALJ's decision.

Lykins overstates Dr. Kache's report. In addition to noting that she can grasp tools "on occasion," Kache determined that Lykins had a full range of motion in her wrists and hands, could pick up small objects and coins, effectively oppose her thumb to her fingertips, and manipulate small objects. Moreover, the ALJ accurately summarized the opinion aside from the brief mention that she could grasp tools on occasion.

The ALJ's omission of the "grasp tools" finding is not dispositive, because the limitation on her grasp was neither uncontroverted nor significantly probative. Cf. id. And nothing in the medical evidence—including records from several physicians who treated or examined Lykins—corroborated Dr. Kache's assessment. To the contrary, Dr. Beau Jennings also assessed Lykins' hand and wrist functioning, noting no limitation on her ability to "effectively grasp tools such as a hammer." Nor did Lykins claim she had such limitations in her application, even when specifically asked. Instead, when Lykins was asked what caused weakness in her grip, she testified, "lift[ing] something that's too heavy," but clarified that lifting ten pounds was not a problem. In sum, Dr. Kache's opinion regarding Lykins' ability to grasp tools only occasionally was controverted by every other relevant medical opinion and by Lykins herself. In light of this other evidence, Dr. Kache's observation was not significantly probative. Substantial evidence supported the ALJ's conclusions, and

4

the ALJ was not required to discuss Dr. Kache's grip-related findings in greater detail.[1]

**B**

Lykins challenges the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the] RFC." Credibility determinations are the province of the factfinder, and we will not upset them if they are supported by substantial evidence. Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quotation omitted). To determine whether the claimant's subjective complaints of pain are credible, the ALJ should consider a variety of factors, such as

> the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. at 1145 (quotation omitted). However, "so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a

---

[1] Because we conclude the ALJ was not required to include specific hand limitations in his RFC assessment, we also reject Lykins' claim that the ALJ should have included such a limitation in his hypothetical question to the VE. See Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000) (hypothetical questions are generally sufficient if they include all of the limitations the ALJ found in his assessment of the claimant's RFC).

formalistic factor-by-factor recitation of the evidence." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation omitted).

The ALJ applied the correct legal standard, discussed several of the suggested factors, and tied his findings to the evidence. He noted that Lykins' claims of disabling pain were inconsistent with her daily activities, noting she was able to care for herself and her two young children, prepare meals, clean, go outside, walk, drive a car, and go shopping. Lykins' ability to consistently perform this wide range of activities on a regular basis supports the ALJ's finding. Cf. Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983) (activities not conducted on a daily basis do not "establish, without more evidence, that a person is able to engage in substantial gainful activity" (quotation omitted)).

The ALJ noted Lykins' allegations were inconsistent with objective medical evidence. Accord Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013). He noted the absence of medical findings that "would establish the existence of a pattern of pain of such severity as to prevent [Lykins] from engaging in any work on a sustained basis," and cited the results of an X-ray revealing only "mild to moderate facet degenerative changes" in Lykins' lumbar spine. The ALJ also cited reports from Lykins' treating physician, which documented improvement in her symptoms after surgery and predicted continued improvement with physical therapy. And the ALJ noted that no physician had opined that Lykins was completely disabled. See Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995) ("To establish disabling pain without the explicit confirmation of treating physicians may be difficult.").

6

The ALJ observed Lykins' inconsistent description of her symptoms. For example, Lykins told her treating physician on several occasions that surgery had improved her symptoms significantly, but told another doctor during an examination related to her application for benefits that her back pain was worsening.

Finally, the ALJ discussed Lykins' medical care. He concluded she had not "received the type of medical treatment one would expect for a totally disabled individual," and characterized her treatment as "routine and conservative." The ALJ cited medical reports describing Lykins' improvement after surgery, treatment notes showing her medications had "been discontinued or otherwise adjusted as needed," and the lack of any side effects from her medications. Although we agree with Lykins that some of her treatment was not "routine and conservative," the ALJ's detailed summary of Lykins' medical records shows he understood the nature and effectiveness of her treatment. That the ALJ could have characterized her treatment differently does not undermine his conclusion that Lykins' pain did not preclude all types of work. The ALJ's credibility determination was supported by substantial evidence.

**III**

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

7