943 F.2d 57
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 William R. HUBBARD, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 90-7081.
 United States Court of Appeals, Tenth Circuit.
 Sept. 5, 1991.
 
 Before SEYMOUR and EBEL, Circuit Judges, and BABCOCK,* District Judge.
 ORDER AND JUDGMENT**
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant appeals from a district court order affirming a decision of the Secretary denying social security disability benefits and supplemental security income benefits. Following two evidentiary hearings, the administrative law judge (ALJ) found claimant not disabled and the Appeals Council adopted that finding and denied benefits.
 
 
 3
 Claimant's disability claim is based on the exertional and nonexertional limitations imposed primarily by degenerative arthritis in the lumbar region of his back and the consequences of two related surgical operations, along with tendonitis affecting the toes of his left foot, frequent headaches, and periodontal disease. The ALJ's determination turned on the fifth step of the controlling sequential process, i.e., after finding that (1) claimant was not gainfully employed, (2) claimant suffered from severe impairments, (3) claimant's impairments did not meet or equal one of the presumptively disabling impairments listed in the regulations, and (4) claimant was unable to perform the work he had done in the past, the ALJ concluded that (5) considering the claimant's residual functional capacity (RFC), age, education, and work experience, he was able to perform other work and therefore was not disabled. See generally Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (summarizing five-step evaluation process); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989) (same). In arriving at this final conclusion, the ALJ found claimant capable of performing a full range of sedentary work, see 20 C.F.R. §§ 404.1567(a) and 416.967(a), and then explicitly adhered to the pertinent Medical-Vocational Guideline (grid), i.e., 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.21.
 
 
 4
 Claimant presents three issues for review, which, for ease of analysis, we shall address in the following order:
 
 
 5
 1. The Administrative Law Judge did not properly assess the Appellant's complaints of pain;
 
 
 6
 2. The hypothetical questions asked by the Administrative Law Judge to the Vocational Expert were erroneous; and
 
 
 7
 3. The decisions of the Secretary ... and the District Court are not based on substantial evidence.
 
 
 8
 Appellant's Brief at 1. We review the Secretary's decision in connection with these issues "to determine whether the [Secretary's] findings are supported by substantial evidence and whether the Secretary applied correct legal standards." Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991).
 
 
 9
 Pain can be a nonexertional limitation sufficient to preclude direct, conclusive reliance upon the grids. See Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir.1988). If the claimant's pain "affect[s] the range of activities that the claimant can participate in, the grids can serve only as a framework to aid in determining whether sufficient jobs exist for a claimant, given his limitations and characteristics." Id. When the Secretary has applied the grids without adequately considering such a nonexertional limitation, "we have not hesitated to overturn the Secretary's finding of nondisability." Id. The issue we must ultimately address, then, is whether claimant's pain "significantly limit[s] his 'ability to perform the full range of work in a particular RFC' category [i.e., sedentary work] on a sustained basis." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir.1988) (quoting Teter v. Heckler, 775 F.2d 1104, 1105 (10th Cir.1985)).
 
 
 10
 The framework for the proper analysis of claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir.1987). In brief, we must determine (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact disabling. Id. at 163-64. There is no question that claimant's back condition is an impairment capable of producing pain and that it could potentially result in the kind of pain alleged. Cf. Williams, 844 F.2d at 753-54 (summarily holding that claimant with degenerative disc disease necessitating two surgical operations satisfied first two steps of Luna analysis). The crux of the matter is therefore whether, on the basis of the medical data, any other objective indications of the degree of pain, and claimant's own account of its severity, the ALJ could properly choose to disbelieve claimant's assertions of pain-related limitations on his sedentary work capacity. See Luna, 834 F.2d at 163.
 
 
 11
 Claimant's primary complaints in this regard concern his incapability of sitting for more than about thirty minutes without incurring muscle spasms and pain, his inability to stand or walk for more than about forty-five minutes without pain, and his need to lie down and provide his back heat, exercise, and rest periodically between episodes of such activity. See transcript of February 19, 1988, hearing at 7-15 (Appendix to Appellant's Brief (Appendix) at 292-302). The ALJ summarily discounted these complaints, concluding that "the pain of which [claimant] complains is not established by the medically acceptable clinical and laboratory findings, his daily work activities and the medication, at a level of severity to preclude all work activity." Recommended decision of ALJ dated May 24, 1988, at 3; see also id. at 4 ("The [ALJ] finds the statements and testimony of disabling impairments and pain are not supported by the medically acceptable clinical and laboratory findings of record.").
 
 
 12
 Beginning with the pre-surgical evaluations of Dr. Strom and Dr. Schneider in December of 1985 and February of 1986, see Appendix at 172-74 and 182, essentially all of the medical evidence in the record either supports or is consistent with claimant's allegations of pain and related impairment. The post-surgical notes and reports of Dr. Trent, see id. at 240, 270, and 319-22, and Dr. Schneider, see id. at 313-16, substantiate rather than contradict the presence of significant pain, spasms, and physical limitations consistent with claimant's allegations persisting and, eventually, worsening after claimant's second surgery in February of 1986. Cf. Williams, 844 F.2d at 755-56. Moreover, the record reflects such other indicia of true pain as claimant's consistent expressions of, and persistent attempts to find relief for, his chronic symptoms, including the use of prescription medications for pain, inflammation, and muscle spasms. See Luna, 834 F.2d at 165-66. The evidence of claimant's quite restricted daily activities, see Appendix at 330-32, though less objective, is nevertheless also entirely consistent with claimant's asserted symptomatology. See Luna, 834 F.2d at 166.
 
 
 13
 The ALJ may support his decision with references to claimant's behavior during the hearing and demeanor as a witness, as "the determination of credibility is left to the observations made by the [ALJ] as the trier of fact," Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir.1983). However, where, as here, no such observations are specifically articulated by the ALJ as reasons for discounting the claimant's credibility, we are free to view the ALJ's conclusion with skepticism. Talbot v. Heckler, 814 F.2d 1456, 1461 (10th Cir.1987); cf. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990) (objective observations of claimant's behavior undermined her alleged pain symptomatology; ALJ's consequent rejection of pain allegations as not credible supported by substantial evidence). We conclude that substantial evidence does not exist in the record to support the rejection of claimant's assertions of pain and related nonexertional impairment.
 
 
 14
 That still leaves us with the ultimate question whether, accepting claimant's pain and related allegations as true, his ability to perform the full range of sedentary work is thereby "significantly limited." See Williams, 844 F.2d at 752. Fortunately, this matter was explored with a vocational expert at claimant's second hearing. See generally Talbot, 814 F.2d at 1465 and n. 6 (indicating importance of expert vocational testimony regarding effect of nonexertional restrictions on appropriateness of jobs otherwise available for given RFC category). Indeed, the propriety of the two hypothetical questions on this point put to the vocational expert by the ALJ and claimant's attorney is the subject of claimant's second issue on appeal.
 
 
 15
 The ALJ asked the expert,
 
 
 16
 Assuming ... that Mr. Hubbard is able to perform sedentary work, that is, he would be able to be on a job for an eight-hour period, have the use of his hands, arms and eyes, be able to sit and stand alternatively, but he would not be able to do any heavy lifting or being on his feet for long periods of time. Under that assumption, are there jobs you feel that he would be able to perform?
 
 
 17
 Appendix at 307. The expert responded that claimant could probably work as a cashier, toll collector, jail keeper, and gate tender, occupations providing some 1600 positions in claimant's area. Id. Claimant's attorney then asked the expert,
 
 
 18
 Now, if you assume that a person with Mr. Hubbard's education and job skills and also has severe back problems that if he bends the wrong way he'll have muscle spasms and pain, he can sit about twenty minutes and if he doesn't get up he'll have muscle spasms, and that he can stand or walk about forty-five minutes and that he, evidently, has exercises, back exercises two or three times a day with a heating pad. Could that person perform the duties of a cashier? ... And what about the security job? ... Self service gas station job?
 
 
 19
 Id. at 308. This time the expert stated that the occupations specified would not be available to claimant. Id. The only conclusion reasonably to be drawn from these exchanges is that claimant's asserted pain and related impairment do significantly limit his ability to perform the full range of tasks involved in sedentary work. Consequently, the ALJ's reliance on the grids was improper under the principles recognized in Gossett and Williams, discussed above.
 
 
 20
 Having accepted claimant's position with respect to the first issue raised on appeal, we are constrained to do so with respect to the second, related issue as well. The hypothetical question asked by the ALJ was based on an incomplete and unduly favorable view of claimant's overall condition and could not, therefore, elicit a binding expert opinion on claimant's ability to find work. See Talley, 908 F.2d at 588; e.g., Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987). Thus, the Secretary's decision is neither supported by the grids nor by the expert vocational testimony in the record.
 
 
 21
 Our conclusion as to the third issue on appeal follows from our conclusions on the first two. In light of claimant's assertions of pain and related impairment, which the record necessitates we accept as the credible consequence of his medically established pain-producing condition, and the lack of proper expert vocational testimony demonstrating the availability of work for claimant despite his physical limitations, we hold that the record does not contain substantial evidence to support the finding of no disability.
 
 
 22
 We elect not to remand this six-year old case for further proceedings on the issue of disability. The Secretary bears the burden of establishing disability at step five of the evaluation process, Williams, 844 F.2d at 751, 760, and the Secretary's failure to satisfy that burden makes reversal appropriate, see, e.g., id. at 760; Talbot, 814 F.2d at 1466. We wish to make clear, however, that our disagreement with the Secretary relates only to that period for which the record contains adequate medical documentation underpinning claimant's assertions of compensable exertional and nonexertional impairment. We therefore affirm without modification the Secretary's finding of no disability until December of 1985, when Dr. Strom's examination of claimant recognized the severity of the back condition that would lead to claimant's second surgery and his present disabled status.
 
 
 23
 Accordingly, we REVERSE and REMAND to the Secretary for the immediate calculation and award of benefits due the claimant on the basis of his disability commencing December of 1985.
 
 
 
 *
 Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3