**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 22 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AMY F. WHELCHEL,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 02-7149
(D.C. No. 02-CV-208-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** ,
Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff seeks review of the court's denial of Social Security disability (SSD) and supplemental security income (SSI) benefits. She contends she became disabled as of September 30, 1990, her alleged onset date, and that she is entitled to benefits at least through June 30, 1995, the date of the second administrative law judge (ALJ) decision. [1]

Proceedings in this case have been protracted and have included four ALJ hearings, two remands by the Appeals Council, and one remand by the district court. In her first disability application she claimed to be disabled due to depression and anxiety. In her current application she has added obesity, hypertension, and back pain. Plaintiff was born in 1970 and had completed high school and was attending college when she filed her disability applications. She has since earned a B.S. in accounting, Aplt. App. at 554, and her past work experience includes that of flagger, clerk typist, medical records clerk, and audit clerk. *Id.* at 622.

The parties are familiar with the record and plaintiff's medical history, which is thoroughly discussed in the most recent ALJ decision; thus, we do not repeat the facts here. *Id.* at 494-509. Plaintiff has an extensive history of

---

[1]     Plaintiff first filed for benefits in September of 1991. She was insured for benefits only through December of 1991. She must, therefore, establish disability on or before December 31, 1991. *See* 20 C.F.R. § 404.130. If entitled to SSI benefits, these cannot be retroactive prior to September 22, 1992, the date she filed the current application for benefits. *See* 20 C.F.R. § 416.335.

primarily psychological problems with some deterioration of her physical condition during the course of these proceedings. She has nonetheless managed to attend college and complete a bachelor's degree in accounting since the alleged onset of her disability and has been gainfully employed during some of that time.

In the most recent administrative proceedings, at which plaintiff and a vocational expert (VE) testified, the ALJ determined that plaintiff could perform some of her past relevant work and other work of a sedentary nature. The ALJ thus concluded at steps four and five that plaintiff was not disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps of sequential evaluation); 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

## Standard of Review

We review the agency's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citation omitted). However, "[a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). In addition, the agency's failure to either apply correct legal standards, or show us it has done

-3-

so, is also grounds for reversal. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Evidence substantiality is based on the record taken as a whole, and, therefore, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). We will not however, reweigh the evidence, nor substitute our judgment for that of the Commissioner. *See Decker v. Chater*, 86 F.3d 953, 954 (10th Cir. 1996).

## Issues

On appeal to this court, plaintiff raises the following issues for our review:

1. Whether she is entitled to a closed period of disability at least through June 30, 1995, based on either satisfying two of the four criteria in part B of the Listings for mental disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1, or based on the VE's testimony that the limitations expressed in a 1995 Psychiatric Review Technique (PRT) Form would preclude gainful employment;

2. Whether the ALJ's rejection of the 1995 PRT form, which was completed by ALJ Bennett, is a legitimate basis to reject ALJ Bennett's assessment;

3. Whether the VE misconstrued the impact of the term "moderate" as used by the consultative psychologist, Dr. Miles, to describe plaintiff's restrictions; and

4. Whether the ALJ erroneously rejected the disability opinions of Dr. Cooper and the Global Assessment Function (GAF) score of Dr. Miles.

Aplt. Opening Br. at 1-2.

## Discussion

Because the first two issues involve the ALJ's rejection of an earlier PRT form completed by a different ALJ, we consider them together. In his second decision (i.e., the one under present consideration), ALJ Evans stated that he gave no weight to a 1995 PRT form because it was unclear whether the form was completed by a doctor. Aplt. App. at 505. In fact, that PRT form had been completed by ALJ Bennett in 1995 as part of an earlier decision denying benefits. When ALJ Bennett's decision was administratively appealed, the Appeals Council determined he had failed to adequately consider certain treating and examining source opinions and directed the ALJ to provide appropriate rationale to support the assessed limitations, "including rationale for the 'B' and, as applicable, the 'C' criteria ratings in the Psychiatric Review Technique Form." *Id.* at 377.

Following that remand and another hearing, ALJ Evans issued his first decision, in which he further considered the evidence as directed by the Appeals Council and completed his own PRT form, also providing an explanation for his "B" and "C" criteria ratings. *Id.* at 13-30. ALJ Evans' PRT form, which relied on most of the same evidence as ALJ Bennett's, differed somewhat in the "B" criteria rating. *Compare id.* at 29 *with id.* at 317. In his first decision, ALJ Evans did not mention ALJ Bennett's PRT form.

Plaintiff appealed this decision, in part contending ALJ Evans' analysis of the B criteria failed to "cover the entire period as directed by the Appeals Council." *Id.* at 9. Petitioner did not, however, suggest ALJ Evans had erred by not accepting ALJ Bennett's PRT conclusions. *Id.* After the Appeals Council denied review, plaintiff filed a complaint in district court, which remanded the matter to the Appeals Council.

As part of that remand, the magistrate judge determined ALJ Evans had erred in failing to include any of plaintiff's mental limitations in his hypothetical inquiry to the VE. *Id.* at 524. The magistrate judge further noted that the Appeals Council's earlier remand of ALJ Bennett's decision was based in part on errors in the PRT form, *id.* at 525. The magistrate judge then determined that ALJ Evans had subsequently discussed the evidence showing plaintiff's mental impairments and related the evidence to support his conclusions, and stated that the "findings appear to be supported by substantial evidence." *Id* at 525-26. Because the case was remanded for reconsideration of other issues, however, the magistrate judge suggested that "the ALJ may need to re-evaluate [plaintiff's] mental impairments and complete a new PRT. . . ." *Id.* at 526. There was, however, no requirement stated that the ALJ do so.

In the decision at issue now, ALJ Evans again thoroughly discussed the evidence and carefully related it to his conclusions that notwithstanding her

mental and physical impairments, plaintiff retained the RFC to perform her past relevant work or other work of a sedentary nature. Moreover, ALJ Bennett's PRT evaluation, which the Appeals Council did not affirm, but rather found required further consideration, was simply not binding on ALJ Evans. *See Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir. 1987) (holding ALJ's redetermination of plaintiff's RFC not inconsistent with remand order because ALJ may review record on remand, may check initial findings and may make appropriate corrections). In other words, any principles of res judicata or collateral estoppel are inapplicable because ALJ Bennett's decision was not final. Furthermore, plaintiff overlooks the fact that, notwithstanding ALJ Bennett's 1995 PRT findings, he nonetheless concluded plaintiff was not disabled.

Finally, because he did not accept ALJ Bennett's PRT findings, ALJ Evans was under no obligation to include those restrictions in any questions propounded to the VE. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (holding ALJ's inquiries to VE must include all–but only–those impairments supported by evidentiary record). Moreover, the agency regulations specifically provide that following remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order," 20 C.F.R. § 404.977(b); 416.1477(b), which is just what ALJ Evans did. Plaintiff's citation to authority requiring the

Commissioner to evaluate every medical opinion received, *see* Aplt. Br. at 18, is simply irrelevant because ALJ Bennett's PRT form was not a medical opinion. These issues are therefore without merit.

Next plaintiff contends that the VE misunderstood the impact of plaintiff's restrictions, listed as "moderate" on the assessment form of the consultative psychologist (Dr. Miles), as being, in effect, only slight or none. We disagree. The VE quite clearly understood the term moderate to mean that plaintiff had an impairment reducing, but not precluding, the ability to function in three areas identified by Dr. Miles. Aplt. App. at 626. Those three areas were dealing with work stress, behaving in an emotionally stable manner and demonstrating reliability. *Id.* at 558-60. With that understanding, the VE testified that these particular limitations would not impact plaintiff's ability to perform those jobs the VE had identified as being within plaintiff's capabilities. *Id.* at 625-26.

Plaintiff further argues that the use of "moderate" on Dr. Miles' assessment is the same as the use of "fair" in a context this court has determined was in fact "evidence of *dis*ability" in *Cruse v. United States Department of Health & Human Servs.*, 49 F.3d 614, 618 (10th Cir. 1995). Contrary to plaintiff's suggestion, however, the term "moderate" as used by Dr. Miles is not comparable to the use of "fair" in *Cruse* because in *Cruse,* "fair" meant an ability to function which is severely limited but not precluded. *See id.* As described on Dr. Miles' form,

"moderate" does not have this limited a meaning. There is no indication the VE was confused as to the meaning of moderate.

Moreover, the ALJ adequately described his consideration of Dr. Miles' report, Aplt. App. at 504-05, including the results of the Minnesota Multiphasic Personality Inventory-2 test rendered invalid because plaintiff was "attempting to 'fake bad' or to present herself in a negative manner." *Id.* at 504. To this end, Dr. Miles concluded that plaintiff was likely exaggerating her symptoms. *Id.* Plaintiff's attempt to develop inconsistencies between the VE's testimony and the limitations assessed by ALJ Bennett is also unavailing, because, as noted earlier, ALJ Bennett's PRT findings are not controlling. *See* Aplt. Br. at 23-24. This issue is likewise without merit.

Finally, plaintiff contends the ALJ erroneously rejected the disability opinions of Dr. Cooper and the Global Assessment of Functioning (GAF) score of Dr. Miles. Aplt. Br. at 28. Dr. Cooper's opinions, written in April of 2000 and March of 2001 are identical in language, reading as follows:

> Amy Whelchel is my patient. At present she is having difficulty with pain and ambulation secondary to disc disease of her lumbar spine. She is undergoing medical evaluation and therapy. Because of her condition she is not able to work.

Aplt. App at 553, 568.

In signing the form for a handicapped parking placard application, in March of 2000, Dr. Cooper checked off a box stating that plaintiff could not walk

-9-

without the use of or assistance from a brace, cane, crutch, another person, prosthetic device, wheelchair or other assistive device. *Id.* at 552. Dr. Cooper also stated that plaintiff's condition would not affect her "ability to safely operate a motor vehicle under normal or adverse driving conditions." *Id.*

Finally, a Dr. Webb signed a student loan cancellation request stating plaintiff became disabled "approximately" either February or July of 1998, *id.* at 567, and that as a result, plaintiff was "unable to work and earn money or go to school because of an injury or illness that is expected to continue indefinitely or result in death." *Id.* However, plaintiff testified that she was employed as an auditor for the State of Oklahoma from September of 1998 through February 3, 1999. *Id.* at 613-14 . Thus the loan cancellation request seems at best inconsistent with plaintiff's activities during that time period. It is not clear what Dr. Webb's relationship with plaintiff was, but he does not appear to have been a treating physician. Nor is there any accompanying assessment of physical or functional limitations.

The opinions of Dr. Cooper, as plaintiff's treating physician, are entitled to controlling weight if they are well supported and as long as they are not inconsistent with other substantial evidence in the record. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). Here, the ALJ carefully explained that Dr. Cooper's opinions are

simply not well supported, but rather, are brief and conclusory. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *2 (to be accorded controlling weight, treating source's opinion must be supported by "'medically acceptable' clinical and laboratory diagnostic techniques" because ALJ cannot decide case in reliance on medical opinion "without some reasonable support for the opinion"). Moreover, a treating physician's opinion that a social security claimant is disabled is not dispositive "because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner." *Castellano v. Sec'y of Health & Human Servs*., 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2 (treating source opinions on issues reserved to Commissioner never entitled to controlling weight because giving controlling weight to such opinions would constitute abdication of Commissioner's statutory responsibility to determining if claimant is disabled.). Here the ALJ complied with the requirement that he "give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). Because Dr. Cooper's opinions were not supported by specific findings and were inconsistent with other substantial evidence, the ALJ was free to disregard them. *See Doyal*, 331 F.3d at 762.

As to Dr. Miles GAF score of 47, [2] the mental status examination report lists no explanation whatsoever for this score.  Moreover, as noted by the ALJ, Dr. Miles' report is otherwise inconsistent with this low score.  Dr. Miles' report shows plaintiff was oriented as to person, place, time and purpose.  Aplt. App. at 554.  Further, plaintiff performed adequately on tests for memory, information, calculation, attention, abstract thinking, and judgment.  *Id.* at 554-55.  Plaintiff's ability to engage in mental work-related activities indicated moderate difficulties in only three of seventeen adjustment areas, slight difficulties in another three, and no difficulties in the remainder. The ALJ adequately explained why he found Dr. Miles' GAF score unsupported and contradicted by the balance of her report. *Id.* at 505.  Dr. Miles' GAF score was also inconsistent with that of Dr. Lupu, who had earlier indicated a GAF score of 60.  *Id.* at 501.  The ALJ's function is to resolve conflicting medical evidence.  *See Eggleston v. Bowens*, 851 F.2d 1244, 1247 (10th Cir. 1988).

Moreover, plaintiff's GAF score of 47 may indicate problems not necessarily related to her ability to hold a job, *see* DSM-IV-TR at 34, and

_____

[2]    The GAF is used by clinicians to report an individual's overall level of functioning.  *See* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) (DSM-IV-TR) at 32.  A score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." (emphasis omitted).  *Id.* at 34.

therefore standing alone, without any further narrative explanation, this rating does not support an impairment seriously interfering with her ability to work. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

The record clearly demonstrates that the ALJ considered all the evidence and discussed the evidence supporting his decision, as well as any uncontroverted evidence he chose not to rely on and significant probative evidence he rejected. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Ultimately, it is up to the ALJ to weigh and resolve evidentiary conflicts, and we will not reweigh the evidence. *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (given nature and limits of our review, along with detailed reasons offered by ALJ in rejecting medical opinions, we will not second-guess ALJ's decision).

We have carefully reviewed the entire record and conclude that the Commissioner's decision is supported by substantial evidence and that correct legal standards were applied.

**AFFIRMED** .

Entered for the Court

Deanell Reece Tacha
Chief Judge