**David A. REBECK, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.03–2503–KHV.**

United States District Court, D. Kansas.

May 12, 2004.

**52.** *Id.*

**53.** *Cook v. Atchison, Topeka & Santa Fe Ry. Co.,* 816 F.Supp. 667, 669 (D.Kan.1993).

Joan H. Deans, Deans Law Office, Raytown, MO, for Plaintiff.

Melanie D. Caro, Office of United States Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

David A. Rebeck appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This matter is before the Court on plaintiff's *Motion For Judgment* (Doc. # 5) filed January 29, 2004. For reasons set forth below, the Court overrules plaintiff's motion.

#### Procedural Background

On March 1, 2001, plaintiff filed his disability application with the Social Security Administration. He alleged a disability onset date of March 1, 2001. Plaintiff's benefit application was denied initially and on reconsideration. On May 29, 2003, an

administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the Social Security Act and that he was not entitled to disability benefits. On August 1, 2003, the Appeals Council denied plaintiff's request for review. The decision of the ALJ stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g), § 1383(c)(3).

### Factual Background

The following is a brief summary of the evidence presented to the ALJ.

David A. Rebeck is 48 years old. He suffers from degenerative arthritis of the back, right knee and right elbow, and mental and emotional impairments (depression and anxiety in particular). Transcript Of Proceedings Before The Social Security Administration ("Tr.") at 19, attached to defendant's *Answer* (Doc. # 4) filed December 15, 2003. The ALJ concluded that plaintiff is unable to perform his past relevant work, but that he can perform a significant range of sedentary work despite his impairments. Tr. 22–24.

Plaintiff is a high school graduate. He lives with his mother and receives food stamps but no other income. Tr. 61–62. From April of 1977 through July of 1978, plaintiff served in the United States Air Force. From April of 1983 through August of 1989, plaintiff was self employed as a house painter. Tr. 128, 146. From August of 1989 through May of 1993, plaintiff painted some houses and did lawn work. Tr. 155. From May of 1993 through July of 1999, plaintiff worked as a laborer for the Leavenworth Times newspaper. Tr. 128, 146.

On January 12, 1995, Rebeck underwent a diskectomy and posterior spinal instrumentation fusion (vertebral fusion) at the Veteran's Administration Medical Center in Leavenworth, Kansas (VAMC). Two rods were implanted in his back with three fusions. His post-surgery diagnoses included herniated nucleus pulposus at L5–S1, degenerative disk disease, and depression and anxiety, per history. Tr. 197–99. Following surgery, doctors gave plaintiff a back brace which he wears every day. Tr. 49. The brace provides some relief. After his back surgery, plaintiff reduced his work hours at the Leavenworth Times. Tr. 41, 145.

In 1996, plaintiff had arthroscopic surgery on his right elbow. Plaintiff testified that he still experiences numbness in his right elbow. Tr. 53. Plaintiff wears an elbow brace when he uses his arm. *Id.*

In 1997, plaintiff had surgery on his right knee because of tendinitis. Plaintiff testified that he still experiences popping and snapping in his knees. Tr. 49–50. Plaintiff has knee braces which he wears on both knees when performing any activity. Tr. 50–51. He usually wears the knee braces every day.

On February 12, 2001, Steve Kisker, a staff psychiatrist at VAMC, met plaintiff for a counseling session. Tr. 238–39. Dr. Kisker noted that plaintiff was dominated by his girlfriend's psychosis that was becoming dangerous. Dr. Kisker noted that plaintiff had been anxious and unable to sleep. Dr. Kisker assessed severe partner relational problems and rated plaintiff's global assessment of functioning (GAF) at 55, which indicated that plaintiff had some moderate symptoms or moderate difficulty in social, occupational or school functioning. *See* Tr. 238; DSM–IV at 32.[1]

---

**1.** The GAF is a subjective determination of "the clinician's judgment of the individual's overall level of functioning," based on a scale of one (low) to 100 (high). American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM–IV") at 30. The scale does not evaluate impairments caused by physical or environmental factors. *See id.*

On June 9, 2001, at the request of the Social Security Administration, Kamran Riaz, M.D., examined plaintiff. Plaintiff's chief complaints were hepatitis, back, elbow and knee pain, and a history of depression. Tr. 269. Plaintiff reported that his knee sometimes popped and gave way, and that he had sharp pain in his right elbow when he lifted or pulled heavy objects. *Id.* Dr. Riaz diagnosed plaintiff with arthralgias (joint pain), a history of hepatitis and a history of depression. Tr. 271–72. Dr. Riaz noted that plaintiff also had a history of joint discomfort and that during the examination he showed pain in the lumbar region. Tr. 271. Dr. Riaz also noted that plaintiff had crepitation (popping noise) in the right knee. *Id.*

On June 15, 2001, at the request of the Social Security Administration, David R. Mouille, Ph.D., a psychologist, examined plaintiff. Dr. Mouille noted that plaintiff had a diagnosis of depression with anxiety and that he reported a series of symptoms consistent with such a diagnosis. Tr. 274. Dr. Mouille noted that plaintiff was cooperative and did not seem to attempt to influence the outcome of the examination. Tr. 275. Plaintiff reported that he was able to keep his own schedule, bathe, cook, drive, manage money, do chores, care for a child or sick adult, shop, do lawn work and use public transportation. Tr. 276. Dr. Mouille diagnosed depression with anxiety, but he concluded that plaintiff could maintain an adequate work schedule with average performance demands. *Id.* Dr. Mouille rated plaintiff's GAF at 80, which indicated that if plaintiff had symptoms, they were transient and expected reactions to psychosocial stressors such as difficulty concentrating after family argument, but that plaintiff had no more than slight impairment in social, occupational or school functioning. *Id.; see* DSM–IV at 32.

On October 18, 2001, Dr. Kisker examined plaintiff and diagnosed moderately severe recurrent depression. Tr. 360. Kisker rated plaintiff's GAF at 50, which indicated that plaintiff had some serious symptoms or a serious impairment in social, occupational or school functioning. *Id.; see* DSM–IV at 32.

On February 20, 2002, Dr. Kisker again examined plaintiff and diagnosed moderate recurrent depression. Tr. 359. Dr. Kisker rated plaintiff's GAF at 55, which indicated that plaintiff had some moderate symptoms or moderate difficulty in social, occupational or school functioning. *Id.; see* DSM–IV at 32.

On April 22, 2002, Dr. Kisker again examined plaintiff and diagnosed moderate recurrent depression. Tr. 354. Dr. Kisker rated plaintiff's GAF at 59, which indicated that plaintiff had some moderate symptoms or moderate difficulty in social, occupational or school functioning. *Id.; see* DSM–IV at 32.

On April 8, May 20, June 21, August 28 and 30, 2002, plaintiff went to VAMC with continued complaints of right shoulder pain, back pain and restricted range of motion. Tr. 340–41, 349, 351, 355.

On August 30, 2002, Dr. Kisker again examined plaintiff and diagnosed mild depression. Tr. 340. Dr. Kisker rated plaintiff's GAF at 66, which indicated that plaintiff had some mild symptoms or some difficulty in social, occupational or school functioning, but that he was generally functioning pretty well and had some meaningful interpersonal relationships. *Id.; see* DSM–IV at 32.

On August 30 and September 3, 11, 13, 18 and 20, 2002, plaintiff underwent physical therapy on his right shoulder. Tr. 330, 332, 335, 336.

On September 19, 2002, Nancy Nowlin, M.D., a rheumatologist, examined plaintiff for right shoulder pain. Tr. 333. Plaintiff reported that despite physical therapy and an injection six weeks earlier, he still had

pain in his right shoulder. Dr. Nowlin diagnosed rotator cuff tendinitis. Tr. 334.

On September 25, 2002, Dr. Richard C. Robinson examined plaintiff. Dr. Robinson discontinued plaintiff's physical therapy because it had not reduced the pain in his right shoulder. Tr. 332.

On October 22, 2002, plaintiff returned to VAMC for an MRI of the right shoulder. The MRI revealed minimal abnormal signal intensities involving the supra and infraspinatus tendons, minimal degenerative changes of acromioclavicular joint with slight impression on superior aspect of supraspinatus tendon. Tr. 313.

On October 31, 2002, Dale D. Dalenberg, M.D., examined plaintiff for right shoulder pain. Dr. Dalenberg noted that plaintiff had undergone physical therapy and steroid injection without relief. Tr. 322. Dr. Dalenberg scheduled plaintiff for right shoulder arthroscopic surgery and possible repair in January of 2003. *Id.*

On December 23, 2002, Scott Sumerall, Ph.D., examined plaintiff for a psychology assessment. Based on tests administered on October 30 and November 7, 2002, Dr. Sumerall diagnosed extremely severe depression and moderate to severe anxiety. Tr. 319–20. On the Beck Depression Inventory, plaintiff had a composite score of 39, which fell in the extremely severe range. On the Beck Anxiety Inventory, plaintiff had a composite score of 25, which fell in the moderate to severe range. Dr. Sumerall noted that plaintiff demonstrated difficulty with tasks of incidental learning and arithmetic calculation and the presence of extremely severe depression which included suicidal thoughts and moderate to severe anxiety. Tr. 319–20. Dr. Sumerall noted plaintiff's report that his personal life had deteriorated significantly and that he lived in a chaotic home environment in which his live-in girlfriend's children were problematic and a source of daily conflict. Tr. 320. Dr. Sumerall also noted that

"[m]emory examination revealed intact temporal orientation and adequate attention" and that during a further test, plaintiff demonstrated adequate performance on the memory components of registration, retrieval and encoding. Tr. 319–20. Dr. Sumerall did not suggest that plaintiff had significant difficulties concentrating.

On January 13, 2003, plaintiff had right shoulder arthroscopic surgery with arthroscopic debridement of subacronila bursa and open right distal clavicle resection. Tr. 306. His postoperative diagnosis included chronic right shoulder impingement, rotator cuff tendinitis and arthrosis. *Id.* On January 30, 2003, during a follow-up examination, plaintiff reported moderate discomfort, but full passive or active assisted range of motion. Tr. 305.

On February 18, 2003, plaintiff consulted Dr. Kisker for psychotherapy. Dr. Kisker assessed recurrent mild depression which was improving from previous exacerbation. Tr. 304. Dr. Kisker rated plaintiff's GAF at 65, which indicated that plaintiff had some mild symptoms or some difficulty in social, occupational or school functioning, but that he was generally functioning pretty well and had some meaningful interpersonal relationships. *Id.; see* DSM–IV at 32.

On March 17, 2003, plaintiff returned to VAMC for physical therapy on his right shoulder because of ongoing pain and decreased range of motion. Tr. 309.

At a hearing on May 1, 2003, plaintiff testified that he last performed substantial gainful activity at the Leavenworth Times, where he bundled newspapers in the mail room. Tr. 40. In this position, he stood the entire day and had to constantly bend, squat or use his arms repetitively. Plaintiff attempted to return to work following each of his surgeries, but he eventually quit his job because he could not stand for more than 20 minutes at a time, repetitive motion inflamed his arms, his knees

burned when loading papers, and his back pain increased. Tr. 41, 43.

Plaintiff testified that he could not perform any job that included heavy lifting or prolonged standing. Plaintiff testified that he could not perform a security monitor-type job because he could not concentrate on a video or computer screen. Tr. 64.

Plaintiff testified that because of his back, he can only walk one block before experiencing pain. Tr. 57. With activity, plaintiff experiences pain, burning and tightness in his back. He also experiences back pain when walking more than a block, standing longer than 20 to 30 minutes, lifting more than five to ten pounds, and sitting for a prolonged period. Tr. 45, 57–58. Activity increases plaintiff's pain level to ten on a scale from one to ten. Tr. 46. Plaintiff takes pain medications (including Ibuprofen, Naproxen and Codeine) but cannot tell any difference in his pain. Tr. 47. Plaintiff receives some relief from lying down and he lies down every day for two to three hours at a time. Tr. 48.

Plaintiff testified that he experiences knee problems when he climbs stairs at home. Tr. 39. His right knee pops and goes out from under him and has often caused him to fall. *Id.* His knee braces provide support, but they do not aid with the popping in his knee. Plaintiff uses a cane to get out of his bed and car. Tr. 53.

Plaintiff testified that despite surgery in January of 2003, his right shoulder remains extremely painful. Tr. 56.

Plaintiff testified that he was diagnosed with hepatitis in 1987. Tr. 58. Plaintiff attributes his recent fatigue and weakness to hepatitis. Tr. 59.

Plaintiff testified that on a typical day he listens to talk radio. Tr. 63. Plaintiff sometimes goes to the grocery store, but his mother or her caretaker usually picks up what he needs from the store. Plaintiff testified that he likes to read but he has

difficulty focusing. Tr. 65. He also has difficulty sleeping and in spite of sleep medication, he only gets two to four hours of uninterrupted sleep nightly. He does not garden or perform yard work. Tr. 61.

The Commissioner retained Marianne Lumpe as a vocational expert. The ALJ asked Lumpe to consider a claimant of plaintiff's age, education and work experience. The ALJ hypothesized that claimant has the following limitations: he cannot lift anything over ten pounds; he cannot lift over three pounds with any frequency; and he must be able to alternate between sitting and standing during the workday. Tr. 68. Lumpe testified that based on the ALJ's description of plaintiff's capacity, he could not perform his past relevant work but he could perform work as a surveillance system monitor, information clerk, semi-conductor assembler and telephone solicitor, all of which are sedentary positions. Tr. 69. Lumpe indicated, however, that if claimant had to lie down or recline two to three hours during the workday because of pain or fatigue, no work would be available in the national economy. Tr. 70–71.

In his order of April 23, 2001, the ALJ made the following findings:

1. Claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2 Claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart R, Regulation No. 4.

4. The undersigned finds that claimant's allegations regarding his limitations are not totally credible for

the reasons set forth in the body of the decision.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of claimant's impairments (20 CFR § 416.927).

6. Claimant has the following residual function capacity: sedentary work providing an opportunity to alternate sitting and standing positions. Mentally and emotionally, he has only mild impairments in functioning.

7. Claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

8. Claimant is a "younger individual" (20 CFR § 416.963).

9. Claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).

10. Claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

11. Claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

12. Although claimant's limitations do not allow him to perform the full range of sedentary work, using the Medical–Vocational Rules as a framework for the decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs, as identified by the vocational expert, include work as a surveillance system monitor, information clerk, semi-conductor assembler, and telephone solicitor.

13. Claimant was not under a "disability," as defined in the Social Securi-ty Act, at any time through the date of this decision (20 CFR § 416.920(f)).

Tr. 24–25.

### Standard Of Review

The ALJ decision is binding on the Court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The Court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. *See Castellano v. Sec'y of HHS,* 26 F.3d 1027, 1028 (10th Cir.1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Evidence is not substantial "if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (citation omitted).

### Analysis

Plaintiff bears the burden of proving disability under the Social Security Act. *See Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. *See* 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the im-

pairment prevents the claimant from continuing his past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. *See* 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988).

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing work in the national economy.

## I. Plaintiff's Credibility

 Plaintiff argues that the ALJ improperly discounted his testimony. The Tenth Circuit has set forth the proper framework for analyzing evidence of disabling pain. The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes pain; (2) whether a loose nexus exists between the impairment and the subjective complaints of pain; and (3) whether the pain is disabling based upon all objective and subjective evidence. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987). In the final step, the ALJ should consider the following factors:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

Here, the ALJ found that plaintiff's "allegations regarding his limitations are not totally credible." Tr. 23. In particular, the ALJ rejected plaintiff's testimony that (1) he had to lie down two to three hours a day because of back pain and (2) he had impaired concentration such that he could not perform a security monitor-type job. After noting that the medical evidence did not support a finding of a disabling permanent physical or mental impairment, the ALJ noted:

claimant has admitted in the record that he spends several hours a day listening to the radio, is able to read books and newspapers, and can visit with friends and relatives, which demonstrates a level of concentration and social functioning consistent with some work. (ex. 3E) He also acknowledged to the Administrative Law Judge at the hearing that he can drive and do his own laundry, which further demonstrates that he has retained a physical capacity for at least some sedentary work. The undersigned also had the opportunity to observe claimant at the hearing, noting that he entered the hearing room without any apparent difficulty, and that his attention, concentration and memory appeared intact. There is also no evidence that he suffers any significant adverse side effects of medications. He also has a somewhat limited work history with little reported income for a lot of years and significant breaks in employment, suggesting that he is not highly motivated for work.

Tr. 21.

### A. Consistency Of Plaintiff's Complaints With Objective Medical Evidence

The ALJ first rejected plaintiff's complaints because they were not supported

by the objective medical evidence of record. *See* Tr. 21. As to plaintiff's physical impairments, the ALJ noted that plaintiff had treatment for multiple impairments including a fusion procedure to his lower back and surgery on his right elbow and right knee, but that the record reflected little indication of disabling, permanent physical impairment. No doctor suggested that plaintiff was unable to work or that he should lie down two to three hours a day. Indeed, plaintiff testified that after his back surgery, doctors specifically told him that he should stay active and not lay in bed all day. See Tr. 48–49. Substantial evidence supports the ALJ conclusion that plaintiff's subjective allegation that he needs to lie down two to three hours a day is not supported by the medical evidence.[2] *See Luna,* 834 F.2d at 165–66 (lack of objective medical evidence to support degree of pain alleged is important factor to consider in evaluating claim of disabling pain); *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990) (medical records must be consistent with nonmedical testimony as to severity of pain).

As to plaintiff's mental impairments, the ALJ noted that plaintiff had a history of treatment for depression and anxiety of moderate to severe intensity. Tr. 21. The ALJ noted that in June of 2001, however, Dr. Mouille, a consulting psychologist, noted no indication of depression or an unusual level of anxiety, and plaintiff's ability to form judgments, make decisions and understand the world around him showed no deficiencies. Tr. 21. Dr. Mouille gave plaintiff a GAF score of 80, which indicated that plaintiff had no symptoms or transient symptoms and he has no more than slight impairment in occupational functioning. *Id.*

Plaintiff argues that his testimony about depression and inability to concentrate is supported by the report of his treating psychiatrist, Dr. Kisker, who diagnosed plaintiff with moderately severe depression and gave plaintiff a GAF score of 50 on October 18, 2001. Notably, Dr. Kisker did not opine as to plaintiff's ability to work or to concentrate. Plaintiff's GAF score of 50 does not necessarily indicate problems related to his ability to work. *See Zachary v. Barnhart,* 94 Fed.Appx. 817, 819 (10th Cir.2004) (GAF score of 45 without explanation does not support conclusion that impairment seriously interferes with ability to work); *Whelchel v. Barnhart,* 94 Fed.Appx. 703, 709–10 (10th Cir.2004) (same as to GAF score of 47). Moreover, Dr. Kisker gave plaintiff higher GAF scores in the following 16 months: 55 (Feb. 20, 2002), 59 (Apr. 22, 2002), 66 (Aug. 30, 2002) and 65 (Feb. 18, 2003). Tr. 304, 340, 354, 359. On August 30, 2002 and February 18, 2003, Dr. Kisker characterized plaintiff's depression as mild. Tr. 304, 340.

Plaintiff also argues that his testimony about depression and inability to concentrate is supported by the report of Dr. Sumerall, a psychologist, who evaluated plaintiff in December of 2002. Like Dr. Kisker, however, Dr. Sumerall did not opine about plaintiff's ability to work. As to plaintiff's depression and anxiety, Dr. Sumerall noted that plaintiff reported that his personal life had deteriorated significantly and he lived in a chaotic home environment in which his live-in girlfriend's

---

**2.** On October 31, 2002, Dr. Dalenberg noted that plaintiff previously had back and elbow surgery with good results," that he previously had elbow surgery "with good result" and that he had some minimal knee symptoms. Tr. 322. These notes do not suggest any disability which would preclude full-time work. On October 31, 2002, plaintiff did complain of severe pain in his right shoulder, but shortly after surgery in January of 2003, he reported only "moderate discomfort" in his shoulder and Dr. Dalenberg found full range of motion. Tr. 305.

children were problematic and a source of daily conflict. Tr. 320. On February 18, 2003, approximately two months after Dr. Sumerall's report, Dr. Kisker noted that plaintiff had finally moved out of that living arrangement and that he had been quite depressed in December of 2002 because everything with his ex-girlfriend "hit the fan." Tr. 304. Dr. Kisker's notations in February of 2003 suggest that the level of plaintiff's depression and anxiety in the fall of 2002 was unusually high because of problems with his ex-girlfriend and her children, and that his mental state significantly improved after he moved out of that living arrangement. On the issue of plaintiff's ability to concentrate, Dr. Sumerall made general findings which suggest that plaintiff's concentration was not significantly impaired. Dr. Sumerall noted that "[m]emory examination revealed intact temporal orientation and adequate attention" and that during a further test, plaintiff demonstrated adequate performance on the memory components of registration, retrieval and encoding. Tr. 319–20. Dr. Sumerall did not suggest that plaintiff had significant difficulties concentrating.

In sum, although the medical evidence establishes that plaintiff complained to treating physicians about pain, fatigue and lack of concentration, no doctor opined that he was unable to work or was required to lie down two to three hours a day. *See Luna,* 834 F.2d at 165–66; *see also Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990) (medical records must be

consistent with nonmedical testimony as to severity of pain); *see also Nichols v. Comm'r of Social Sec. Admin.,* 260 F.Supp.2d 1057, 1074 (D.Kan.2003) (ALJ did not err in concluding that eight sessions over six-month period was inconsistent with claim that plaintiff was totally disabled by depression and stress disorder).

**B. Plaintiff's Daily Activities**

The ALJ also rejected plaintiff's complaints of disabling pain because they were inconsistent with his activities of daily living. *See* Tr. 21. The ALJ noted that plaintiff listens to the radio several hours a day, reads books and newspapers, and visits with friends and relatives, which demonstrates a level of concentration and social functioning consistent with some work.[3] *Id.* The ALJ also noted that plaintiff acknowledged that he can drive and do his laundry, which further demonstrates that he has retained a physical capacity for at least some sedentary work. Tr. 21. In addition, as Dr. Mouille noted in June of 2001, plaintiff reported that he spends his day doing chores and cleaning his home and that he is "able to keep his own schedule, able to bathe himself, able to cook, able to drive, able to manage money, able to do chores, able to care for a child or sick adult, able to shop, able to do lawn work and able to use public transportation." Tr. 276. Likewise, in an activities of daily living form completed on April 13, 2001,

---

**3.** The ALJ conclusion that plaintiff is able to read books and newspapers apparently is based on an activities of daily living form plaintiff completed on February 3, 1996 (apparently in connection with a prior application for benefits). On a similar form which plaintiff completed on April 13, 2001, plaintiff stated that he no longer reads books or newspapers because he has trouble seeing small print. Tr. 166. Likewise, plaintiff testified that he reads very little because he has difficulty concentrating. Tr. 65. Accordingly, the

ALJ conclusion as to plaintiff's ability to read books and newspapers is not supported by substantial evidence. For reasons stated elsewhere in this order, however, other evidence amply supports the ALJ conclusion to discount plaintiff's testimony in part based on his daily activities. *See Foster v. Chater,* 70 F.3d 1282, 1995 WL 694132, at *2 (10th Cir. Nov.24, 1995) (because credibility determination was otherwise supported by substantial evidence, erroneous consideration of additional factor was at most harmless error).

plaintiff reported that he did laundry once a week for approximately two hours without assistance, that he did housecleaning chores five hours a week, that he watched his girlfriend's children when she was away from the home, that he mowed the lawn, that he shopped for auto parts, that he drove a car, that he was able to leave the home without assistance and that he listened to talk radio nearly all day. Tr. 165. Substantial evidence supports the ALJ conclusion as to plaintiff's daily activities.

### C. Work History

■ The ALJ also relied on plaintiff's work history. A plaintiff's lack of motivation to work may be considered in determining the credibility of his subjective complaints. *See Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir.1995); *Hunter v. Chater,* 895 F.Supp. 1454, 1462 (D.Kan.1995). The ALJ noted that plaintiff may have little motivation to work because he has a somewhat limited work history with little reported income for a lot of years and significant breaks in employment. Tr. 21. Substantial evidence supports the ALJ conclusion that plaintiff is not highly motivated to work.

### D. ALJ's Observations At Hearing

■ The ALJ noted that plaintiff entered the hearing room without any apparent difficulty and that his attention, concentration and memory appeared intact. Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his own assessment of plaintiff's behavior and demeanor during the hearing as part of his credibility determination. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir.2000);

*Hubbard v. Sullivan,* 943 F.2d 57, 1991 WL 172661, at *3 (10th Cir. Sept.5, 1991); *see also Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983) ("determination of credibility is left to the observations made by the [ALJ] as the trier of fact").

### E. Effectiveness Of Medications And Counseling

■ Levels of medication, their effectiveness and the extensiveness of plaintiff's attempts to obtain relief are relevant factors in the credibility determination. *See Huston,* 838 F.2d at 1132. As to plaintiff's depression and anxiety, the ALJ concluded that based on Dr. Mouille's report, these conditions are well controlled by counseling and medication. Tr. 21; *see Dixon,* 811 F.2d at 508 (conditions controlled with medication cannot serve as basis for disability). Substantial evidence supports this conclusion.[4]

### F. Overall Evaluation Of Credibility Factors

■ In reviewing ALJ credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of HHS,* 933 F.2d 799, 801 (10th Cir.1991). Credibility is the province of the ALJ. *Hamilton v. Sec'y of HHS,* 961 F.2d 1495, 1499 (10th Cir.1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible. *See Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the

---

**4.** For example, the record reflects that plaintiff's GAF scores increased gradually from October of 2001 through August of 2002 and despite severe depression in late 2002 (primarily because of problems with his ex-girlfriend and her children), plaintiff had only mild depression by February of 2003.

guise of findings." *Id.* (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)). So long as he sets forth the specific evidence on which he relies in evaluating claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence. *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir.2001); *see Qualls,* 206 F.3d at 1372. In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements. *See* Social Security Ruling 96–7p, 61 Fed.Reg. at 34486. Rather, the ALJ "may find all, only some, or none of an individual's allegations to be credible." *See id.*

Plaintiff primarily objects that the ALJ did not accept his testimony that he must lie down for two to three hours a day and that he cannot concentrate in a security monitor-type job. For reasons stated above, substantial evidence supports the ALJ decision to reject plaintiff's testimony on these issues.[5] Although the ALJ could have discussed the evidence in greater detail, the record need only demonstrate that he considered all of the evidence; an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater,* 79 F.3d 1007, 1009–10 (10th Cir.1996) (citing *Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

## II. Step Five Analysis

■■■ Plaintiff argues that the ALJ failed to sustain his burden at step five. At step five, the ALJ must determine whether—in view of plaintiff's age, education and work experience—plaintiff has the residual capacity to perform other work in the national economy. *See Bowen v. Yuckert,* 482 U.S. 137, 148, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The ALJ bears the burden of proof at step five. *See id.* at 146 n. 5, 107 S.Ct. 2287. To meet this burden, the ALJ must find that plaintiff can perform work "in the claimant's residual functional capacity category." *Talbot v. Heckler,* 814 F.2d 1456, 1462 (10th Cir. 1987).

■■■■ Plaintiff asserts that the ALJ erred because he relied on a hypothetical question to the vocational expert which did not include plaintiff's depression and anxiety. Hypothetical questions must include a full description of a claimant's impairments in order for the testimony elicited by such questions to constitute substantial evidence to support the ALJ's decision. *See Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991). In formulating the hypothetical question, however, the ALJ need not include any alleged limitations which he does not accept as true. *See Roberts v. Heckler,* 783 F.2d 110, 112 (8th Cir.1985). Rather, the ALJ may restrict

---

5. In addition to the reasons stated elsewhere, the Court notes that plaintiff testified that he can sit or stand between 20 and 30 minutes before he experiences back pain and tightness and that he could sit in a car for approximately 45 minutes before he has to get out and stretch because of lower back pain. Tr. 56–58. Plaintiff testified that medication for his back helps if he is sitting down, but that if he stands up and performs any physical activity the pain starts. Tr. 47. At the ALJ hearing, plaintiff testified that he felt back pain the previous day because he checked the oil on his car, moved a couple boxes from the trunk of his car and swept leaves with a broom. *Id.*

Plaintiff's testimony suggests that if he avoids physical activity and is able to alternate between sitting and standing, he can avoid back pain which requires him to be down for two or three hours. *See also* Tr. 145 (in response to question how conditions limit your ability to work, plaintiff responded that he "cannot bend, lift heavy objects, stand [or] kneel"); Tr. 169 (on form dated April 13, 2001, plaintiff stated that his symptoms last until he can sit or lie down); Tr. 191 (in response to question when do you experience symptoms, plaintiff responded "when I do physical labor").

his hypothetical to those limitations which he has found to exist based upon substantial evidence in the record. *See Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993). As discussed above, substantial evidence supports the ALJ decision to discount plaintiff's credibility. Thus the ALJ did not err in relying on the hypothetical question which omitted plaintiff's subjective claims that he needs to lie down two to three hours during the day and that he is not able to concentrate at a sedentary job.

**IT IS THEREFORE ORDERED** that plaintiff's *Motion For Judgment* (Doc. # 5) filed September 26, 2003 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that the Judgment of the Commissioner is **AFFIRMED.**